COMMONWEALTH *vs.* ELI W. REYNOLDS.

Norfolk. Nov. 27, 1875.— April 3, 1876. COLT & LORD, JJ., absent.

An officer, who has a warrant for the arrest of a person charged with a misdemeanor, and who has reasonable cause to believe that such person is in the dwelling-house of another, after notifying him that he has a warrant against a person in the house, and, upon demanding entrance, is refused, has a right to enter the outer door of the house by force, for the purpose of serving the warrant; and he cannot be

treated as a trespasser, although he has failed to notify the owner of the house who the person sought to be arrested is, no inquiry having been made in relation thereto and in fact the person sought for is not there.

On the trial of an indictment, charging the defendant with an assault with intent to kill, the judge instructed the jury that, if they should find that the assault was committed by wanton or reckless acts, the ordinary and natural consequence of which would be the killing of the person assaulted, they would be justified in finding the defendant guilty of an assault with intent to kill. *Held*, that the instruction did not assume that such acts constituted the intent, but that they furnished evidence from which it might be inferred by the jury.

INDICTMENT charging the defendant in the first count with an assault with a gun on Henry B. Woodman, with intent to kill; and in the second count, with a simple assault and battery.

At the trial in the Superior Court, before *Brigham*, C. J., it appeared in evidence on the part of the government, that on the morning of April 21, 1875, Woodman, who was then a constable of the town of Medway, made a complaint before one Deans, a trial justice, against one McKenna for drunkenness, and that Woodman went directly from the office of the magistrate to the house of the defendant, stopping on the way to take one Drake with him, not visiting the residence of McKenna, or looking elsewhere than at the defendant's house for him. Woodman at the trial testified that, on the morning of said April 21, the wife of McKenna requested him, Woodman, to make a complaint on the charge of drunkenness against McKenna, and informed him that McKenna was then at the house of Reynolds, the defendant. This was the only evidence upon which Woodman appears to have acted in going to the defendant's to arrest McKenna; and the government put in evidence tending to prove that, before breaking open the door of the defendant's house, Woodman first rapped on the front door of the defendant's house, but received no response; that he then went around to the back door of the house and also rapped there, whereupon the defendant appeared at the window; that Woodman informed the defendant that he held a warrant to arrest a man in his house, but that he did not want him, the defendant, and he did not state to the defendant, nor did the defendant inquire of him, who that person was against whom he held the warrant; neither did he name the party he wanted to arrest. The government also introduced evi

dence to the effect that the defendant stated three times to Woodman that he should leave the premises, or he, the defendant, would kill said Woodman; that thereupon Woodman proceeded forcibly to enter the back door of the defendant's house, when the defendant shot at and hit Woodman.

There was no evidence introduced by the government tending to show that McKenna was in the house at this time, and the only evidence on this point came from the defendant and his witnesses, and was to the effect that McKenna was not in there at the time and had not been there on that day. And from all the evidence it appeared that he was not arrested there, but was arrested elsewhere on that day.

The defendant denied that Woodman gave him any information as to his business there, and he and his witnesses testified that they did not hear Woodman inform the defendant that he held a warrant, or that he wanted to arrest any person, but they all testified that Reynolds ordered Woodman to leave his premises, and did not fire until after so ordering Woodman, and until Woodman had broken open the door and was proceeding forcibly to enter the premises; the defendant also testified that he sighted his gun and aimed at the door and shot thereat, and that he had no intention to shoot or kill the defendant, but his purpose was only to intimidate Woodman; and the evidence introduced by the defendant was also to the effect that he had stated to his brother in law, who was in the room with him, that he had no intention of hitting Woodman. He also testified that he was accustomed to the use of the gun, and that the scattering of the shot was attributable to the firing through the window, as it did not usually scatter much at short distances.

During the trial, and before the judge instructed the jury, the defendant requested him to give the following instructions:

" 1. Under this indictment the defendant cannot be convicted, if he could not be convicted had the assault been committed on a person not an officer, or on a person who had no legal right to forcibly enter the door.

" 2. The officer could not forcibly enter the outer door of the defendant at all, for the purpose of arresting a stranger on a charge of drunkenness.

" 3. If the officer could, under any circumstances, forcibly enter the outer door of the defendant to arrest a stranger on a charge of drunkenness, he could only do so if the stranger was actually in the house at the time.

" 4. The officer was not justified in breaking the outer door of the defendant's house, if justified at all, to arrest a stranger therefrom, unless he has first stated to the occupant the fact that he had a warrant for the arrest of a person supposed to be therein on a criminal charge, and stated the name of the person sought after, and had been refused admission by the occupant, and this only upon reasonable proof that would justify the presumption that the person sought to be arrested was in the house at the time.

" 5. An ordinary supposition that McKenna was in the house of the defendant is not sufficient to warrant the officer in forcibly entering the defendant's house.

" 6. If the officer was first seen by the defendant while in the act of breaking open the defendant's outer door, the defendant was not required to inquire his business, if he notified him to leave, before he could repel the invasion of the officer.

" 7. If the jury believe that the defendant did not hear or understand that Woodman had a warrant to arrest any person in the house, but that he, the defendant, honestly believed Woodman was attempting an unjustified invasion of his premises, and acted upon that suggestion ; then if he fired for the purpose of deterring Woodman from forcibly entering the defendant's house, he cannot be convicted.

" 8. Even if the defendant exceeded his rightful powers, yet if he had no intention to kill Woodman, or was not actuated by a reckless or wanton disregard of whether he killed him or not, ne cannot be convicted on the first count.

" 9. Even if he had not the specific intent to kill, yet he must have had in his mind the probable fatal result of his act, otherwise an intent to kill cannot even be inferred.

" 10. The government must satisfy the jury that Woodman made his business and authority known to the defendant, before he, Woodman, could justify a forcible entry by the officer ; if there is doubt on this point, the defendant must have the benefit of it."

The judge refused to give all but the 7th, 8th and 10th requests, but instructed the jury as follows:

" If the officer had a warrant directed to him as a constable of the town of Medway, authorizing and requiring the arrest of McKenna for the offence of drunkenness, and having an honest belief, induced by information which, reasonably considered, justified such belief, that McKenna was in the defendant's house, and, for the purpose of arresting McKenna, went to the house of the defendant, notified him that he had a warrant for the arrest of a person in his house, and requested or demanded of the defendant admission to his house for the purpose of serving such warrant, and, upon the defendant's refusal to admit him, proceeded to make a forcible entrance through an outer door of the defendant's house, he was not a trespasser upon the defendant's dwelling-house, whom the defendant might lawfully repel by force from his dwelling; and if under such circumstances the defendant committed an assault upon said Woodman, it was an unlawful and criminal assault and battery ; and, if committed with an intent to kill said Woodman, or by wanton or reckless acts, the ordinary and natural consequence of which would be the killing of said Woodman, the jury would be justified in finding the defendant guilty of an assault with intent to kill, as alleged in the first count of the indictment ; but if the jury should have reasonable doubt of such intent to kill, or of the wanton and reckless character or tendency to kill, of such acts, and at the same time should be satisfied beyond a reasonable doubt that the defendant's assault was unlawful and criminal, he might be found guilty of an assault and battery, as alleged in the second count of the indictment, committed without intent to kill, and either of these findings, according to the evidence applying to each, would be justified, notwithstanding said McKenna was not in fact then in the house of the defendant, and said Woodman did not notify the defendant that he had a warrant for the arrest of McKenna, the defendant not having inquired or sought to know whom the person was whom said Woodman was attempting to discover and arrest."

The jury returned a verdict of guilty on the first count ; and the defendant alleged exceptions.

*M. Fischacher*, for the defendant.  1. The officer had no right, under all the circumstances of the case, to break open the outer door of the defendant's house, McKenna not being in the house at the time.  2 Hale P. C. 103, 117.

2. The officer had broken open the door before the defendant fired, and the bill of exceptions does not show that there was any evidence that the defendant fired before the officer had broken open the door, nor does it appear that the evidence in behalf of the defendant, wherein it appeared that the officer had broken open the door before the defendant fired, was contradicted; the officer must act in a reasonable manner before he can justify a forcible entry into a stranger's house, to arrest a third person supposed to be therein.  2 Hale P. C. 117.  *Commonwealth* v. *Irwin*, 1 Allen, 587.

3. After being ordered away, the officer was bound to inform the defendant who the person was that he wanted to arrest, before he could justify a forcible entry, and the defendant was not bound to inquire whom he wanted, before refusing the officer admission.

4. The court erred in ruling that Woodman had a right to proceed to make an entry through an outer door of the defendant's house before the defendant refused to admit him.

5. The 6th request for instructions should have been granted, because, if the facts presupposed thereby existed, the circumstances were such that the defendant had not an opportunity to make inquiries until after his rights had already been invaded, and therefore the officer clearly acted in an unreasonable manner; and, as there was evidence tending to show that the defendant did not see the officer until he had proceeded to make a forcible entry, the court could not legally refuse this prayer, and, in refusing it, must have encroached upon the province of the jury, and assumed the evidence on this point to be untrue.  The facts assumed by the defendant in this prayer should have been submitted to the jury under this instruction.

6. The 9th instruction requested should have been given, in order to enlighten the jury as to the legal application of the preceding instruction.

*W. C. Loring*, (*C. R. Train*, Attorney General, with him,) for the Commonwealth.

DEVENS, J.   The instructions of the presiding judge state substantially the propositions that an officer, who is provided with a warrant to arrest one charged with a misdemeanor, and who has information which leads him reasonably to believe that the person sought is within the dwelling-house of a third person, upon notice to such third person that he has a warrant against one who is in the house, and, upon demanding admission, such admission being refused, is entitled, for the purpose of serving his warrant, to make forcible entrance through the outer door of the house ; and further, that the officer cannot be treated, when he has thus entered, by the owner of the house, as a trespasser therein, even if he has failed to notify the owner who the person sought to be arrested is, (no inquiry having been made in relation thereto,) and even if such person is not actually within the house.

The doctrine that a man's house is his castle, which cannot be invaded in the service of process, was always subject to the exception that the liberty or privilege of the house did not exist against the king.   It had no application, therefore, to the criminal process.   Even in case of a misdemeanor, while it has been held in some cases that, before breaking open the outer door, the officer should demand admission, it is fully recognized in all the cases, that, after such demand and its refusal, the officer may lawfully enter by force and serve his process, even if it be against the occupant of the house.   *Launock* v. *Brown*, 2 B. & Ald. 592. *Burdett* v. *Abbot*, 14 East, 1, 163.   *Curtis's case*, Fost. 135.   *Semayne's case*, 5 Rep. 91.   *Kneas* v. *Fitler*, 2 S. & R. 263.   As this privilege of the house is intended for the benefit of the occupant thereof and his family, it would necessarily follow that when he could not be protected by it, no third person could. *Semayne's case, ubi supra.*  ·

The rule cited by the defendant's counsel from 2 Hale P. C. 103, 117, that an officer who breaks into another's house to arrest a felon is justified if he is found therein, but otherwise not, does not apply to the case of an officer who, holding a warrant against an alleged offender, has reasonable cause to believe that he is within such house, and who, after demanding admittance and being refused, then forcibly enters.   *Commonwealth* v. *Irwin*, 1 Allen, 587.

Nor would the occupant of the house have any ground of complaint, even if he were not informed who the person thus sought actually was, when he made no inquiry in reference to it. Unless he endeavored to be further informed, it was sufficient for him to know that an officer, provided with a warrant against an alleged offender, who believed that he was within his house, was seeking to arrest him there.

The instructions given upon the hypothesis that the defendant did not hear or understand that the officer had a warrant, but acted upon the honest belief that he was attempting an unjustifiable invasion of his premises, were all that the defendant could justly claim. If the sixth instruction requested, which was that " if the officer was first seen by the defendant while in the act of breaking open the defendant's outer door, the defendant was not required to inquire his business, if he notified him to leave, before he could repel the invasion of the officer," meant only that if what the defendant thus saw was all that was then known to him, he was justified in repelling the invasion by force, it was fully covered by the instructions actually given upon this subject. If, however, it was intended to ask a ruling that, while the object of the officer, and the purpose for which he was seeking an entrance, were known to the defendant, yet, if the first that was actually seen by the defendant was the attempt to break open the outer door, he could thus repel the invasion, such ruling should not have been given.

The ninth instruction requested was that if the defendant " had not the specific intent to kill, yet he must have had in his mind the probable fatal result of his act, otherwise an intent to kill cannot be inferred," need not have been given. It was essential to a conviction of the charge of assault with intent to kill, that such intent should be proved. But the charge of the judge upon this point was all that the case required. The jury were instructed that if the assault was " committed with an intent to kill said Woodman," by which was obviously meant an intent shown by some direct evidence, or committed " by wanton or reckless acts, the ordinary and natural consequence of which would be the killing of said Woodman, the jury would be justified in finding the defendant guilty of an assault with intent to kill." These instructions do not assume that " reckless or wan-

ton acts," as therein described, constitute in themselves the intent which was to be proved, but that they furnish evidence from which such intent may be inferred, and justify the jury in finding its existence. To have adopted the instruction requested might have led the jury to believe that it was necessary to find a specific intent, or the contemplation of a probable fatal result, by evidence other than that which might be afforded by proof of such acts.

The eighth instruction requested by the defendant, that "if he had no intention to kill Woodman, or was not actuated by a reckless or wanton disregard of whether he killed him or not, he cannot be convicted on the first count," was given. Having been given at his request, if liable to be construed by the jury as authorizing a conviction on the first count, even if an intent to kill was not shown, but something less than this, the defendant cannot object thereto. But in connection with the charge of the judge, which treats reckless and wanton acts, the natural result of which would be the killing of another, as evidence only which would justify the jury in finding this intent, such construction could hardly have been given to it.　　*Exceptions overruled.*