## UNITED STATES v. JENKINS.

### No. 4654.

District Court, E. D. Tennessee.

Nov. 11, 1941.

James B. Frazier, Jr., U. S. Atty., of Chattanooga, Tenn., for plaintiff.

Hodges & Doughty, of Knoxville, Tenn., for defendant.

TAYLOR, District Judge.

This is before me on motion to suppress certain evidence procured by a deputy United States Marshal, who was armed with an arrest warrant or capias, for a person other than the defendant named therein. The person who was sought by the deputy Marshal was a brother-in-law of the defendant, and resided in the same neighborhood as the defendant. The deputy Marshal was accompanied by a state officer of Cocke County, who was familiar with the relationship between the person sought by the deputy Marshal and the defendant, and in substance advised the deputy Marshal that the person sought by him might be at the home of his brother-in-law, but gave the deputy Marshal no specific facts which would support this conclusion. Under these circumstances the deputy Marshal went to the home of the defendant herein, disclosed his identity and inquired of the defendant whether his brother-in-law, the person he was seeking, was there. This occurred at approximately two o'clock in the morning at a time when the defendant and other members of his family, at least his wife, were in bed. The defendant advised the deputy Marshal that his brother-in-law was not there, and asked the deputy Marshal when he indicated that he intended to enter the house to search it if he had a search warrant, and was advised by the deputy Marshal, in effect, that he did not need a search warrant in the circumstances. Thereupon the deputy Marshal entered the house without any physical protest, and no protest other than a mere request for the production of a search warrant, and while in the house discovered in one of the rooms some fruit jar cartons commonly used in the vicinity as containers for moonshine or tax unpaid whiskey, and certain other fruit jars containing a clear liquid. Further examination by the deputy Marshal disclosed that the fruit jar cartons contained similar jars, and that all of the jars contained whiskey which bore no evidence of the prepayment of the required tax.

On the basis of this discovery the defendant was indicted by the grand jury, and upon arraignment moved the court to suppress this evidence so procured.

I have been unable to find any case precisely in point, though I have examined all of the cases cited by defendant in support of his motion, and have made considerable

independent investigation. The only case I have found which discusses the question at all does not bear directly upon the point at issue, and is the case of Commonwealth v. Reynolds, 120 Mass. 190, 21 Am.Rep. 510, cited in support of the text in Voorhees' Law of Arrest, page 140, sec. 162. The text recites that "it is not necessary to notify the occupier of the house who the person sought to be arrested is if no inquiry is made in relation thereto, even if the person sought to be arrested is not actually in the house, it being sufficient for the occupier to know that an officer provided with a warrant against the alleged offender who believes that he is within his house is seeking to arrest him there".

Under the general law the belief that an officer must have to protect him with respect to any matter as to which honest belief is essential is a belief founded upon facts or circumstances justifying the belief. It does not appear in the instant case that either the deputy Marshal or the accompanying state officer knew any fact or sufficient facts to create an honest belief that the person sought was in the premises where he was being sought. The only circumstance tending to create that belief which can hardly arise above suspicion was the relationship existing between the defendant and the person sought.

All of the protection individuals are guaranteed under the Constitution grows out of the sanctity of the home, and the practical considerations which would result from invasions of the home. In other words, if homes were not protected from unreasonable and unjustified invasion by law, homeowners would protect themselves by force from such invasions. If the court should hold that an officer armed with an arrest warrant charging either a misdemeanor or a felony, or armed with a capias, could search residences of all of the accused's relatives in law, it would open the door to invasions of the privacy of dwelling houses, and violate, as I believe, the spirit of the constitutional safeguards set up not only to protect homes, but to protect officers who, in their zeal to execute writs, might transgress to the point of justified resistance on the part of homeowners. It is not meant to criticise the officer attempting to execute this process, for, in so far as the record speaks, he was guilty of no unseemly conduct while in the residence, and was apparently undertaking to execute the writ, but I think on insufficient grounds to justify an invasion of the privacy of the defendant's home.

The evidence probably would necessarily be suppressed on another ground, and that is that while in the residence attempting to execute the arrest warrant nothing was discovered which in and of itself would support a conviction, and the officer, in order to procure sufficient evidence to support a conviction, necessarily made investigations as to the contents of the cartons and of the jars which could not in any sense be said to have related to an attempted execution of a warrant or capias.

Nothing else appearing, if the officer had been engaged in the lawful execution of a warrant or capias in the residence of the defendant, and if while so doing he had discovered offenses without making collateral explorations such evidence clearly would be admissible, or if the officer while in the residence of the defendant had made an arrest, which he did not do in the instant case, pursuant to the mandate of any warrant or writ in his possession, then under the settled authority he would have had the additional right to make such incidental searches of the premises as would tend to disclose the means of the commission of such offenses.

There might be circumstances arising out of the gravity of the offense committed by the person sought as would make of an entry such as here involved a lawful and reasonable entry. But where the offense charged is a violation of a revenue statute involving no violence, I cannot bring myself to the view that with so slight justification for the belief that the accused was in the residence of the defendant, an entry at two o'clock in the morning is other than a violation of a constitutional right of the defendant, and the right was clearly reserved, and therefore the evidence procured by the officer must be suppressed.