## COMMONWEALTH *vs.* REINALD SILVA, JR.

Hampden. November 3, 2003. - January 28, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Search and Seizure,* Forcible entry by police, Arrest, Warrant. *Practice, Criminal,* Motion to suppress, Warrant. *Arrest.*

This court concluded that art. 14 of the Massachusetts Declaration of Rights requires that police with a valid arrest warrant have a reasonable belief that the location to be searched is the suspect's residence, and that the suspect is in his residence at the time the arrest warrant is executed [776-780]; accordingly, police possessing a valid warrant for a suspect's arrest lawfully entered a certain apartment, where they had a "reasonable belief" that it was the suspect's dwelling and that the suspect was present when they entered, in that the building manager informed them that the suspect was the sole lessee at that time, they observed the door to be ajar, they determined that the door was barricaded, they observed activity in the apartment that suggested the occupant was home, and they made a tentative identification of the suspect before entering the apartment [780-781].

Brief comments by codefendant's counsel in his argument in support of a suppression motion did not adequately raise the issue whether police violated the requirement that they "knock and announce" before entering an apartment to execute an arrest warrant against a defendant on drug-related charges [781-783]; moreover, even had the defendant properly preserved the issue, the officers' concern about the imminent destruction of the evidence, prompted by the activity they observed and toilet flushing sounds they heard within the apartment, justified their failure to announce their purpose in entering the apartment, entering the bathroom, and searching the toilet [783-785].

COMPLAINTS received and sworn to in the Holyoke Division of the District Court Department on November 17, 1999.

A pretrial motion to suppress evidence was heard by *Philip A. Beattie,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court granted an application for direct appellate review.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

*Neil V. Golden* for the defendant.

IRELAND, J. This case raises the first impression question of what standard police must meet under art. 14 of the Massachusetts Declaration of Rights to justify entry into a suspect's residence pursuant to a valid arrest warrant — probable cause or a reasonable belief. We conclude that a reasonable belief is the proper standard.

*Background.* The defendant was charged in the Holyoke District Court with breaking and entering in the daytime with the intent to commit a felony (G. L. c. 266, § 18); possession of a class A drug with the intent to distribute (G. L. c. 94C, § 32); possession of a class A drug (G. L. c. 94C, § 34); and a school zone violation (G. L. c. 94C, § 32J). Prior to trial, he filed a motion to suppress the heroin seized by the police in the course of arresting him in an apartment, alleging, inter alia, that "there was no probable cause to execute an arrest warrant and enter the premises." After an evidentiary hearing, the judge granted the defendant's motion. A single justice of this court allowed the Commonwealth's interlocutory appeal to the Appeals Court. We then granted the Commonwealth's application for direct appellate review. Because we conclude that the police, in executing a valid arrest warrant at the suspect's alleged residence, possessed the requisite reasonable belief that the suspect both lived in, and was present at, the residence, and there is no merit to the defendant's claims concerning violation of the "knock and announce" rule and the seizure of drugs at the residence, we reverse the motion judge's order allowing the defendant's motion to suppress, and remand the case for further proceedings consistent with this opinion.

*Facts.* In reviewing the allowance of a motion to suppress, we will not disturb a judge's findings of fact absent clear error. *Commonwealth* v. *Torres,* 433 Mass. 669, 670 (2001). We supplement the facts found by the motion judge with uncontroverted testimony of the police officers at the motion hearing.[1] *Commonwealth* v. *Watson,* 430 Mass. 725, 726 n.5 (2000). We

---

[1] The motion judge's findings of fact do not suggest that he disbelieved the officers' testimony.

recognize that the sequence of events and some of the facts at first blush do not appear to make sense. However, these are, indeed, the circumstances of this case.

The judge found that at approximately midday on November 16, 1999, a confidential informant told Detectives Kenneth Ferris and William Lempke[2] of the Holyoke police department that three men were selling drugs through a hole in the wall of apartment no. 401 at 275 Main Street in Holyoke. The detectives were also informed that the apartment door was fortified. Lempke testified that, after receiving this information, the officers went to the apartment, knocked on the door that was ajar (the lock was broken) but secured by something behind it, and announced that they were the police. While Lempke remained in the hallway, Ferris went to the police station and telephoned the building owner. The building owner put the police in touch with the apartment building manager, who informed the police that Danny Acevedo was the sole lessee of apartment no. 401.

The motion judge found that, after checking records, the police determined that there were several outstanding warrants for Acevedo's arrest. Ferris and Detective Dennis Egan viewed Acevedo's photograph before going to the apartment. Ferris, Egan, and Officer Ron Mihalek then went to the apartment, but did not bring Acevedo's photograph with them. Approximately one hour after Lempke and Ferris first arrived at the apartment, the officers knocked on the door, which was barricaded, as the police later discovered, by three two-by-four inch boards and a full-size refrigerator. No one answered the door, but the officers heard movement and the toilet flushing inside the apartment.

Lempke was able to see inside the apartment through a two and one-half to three inch hole in a piece of plywood that, as the motion judge found, "apparently had been used to cover the apartment window." Through this hole, Lempke saw three men in the bathroom, including the defendant, whom Lempke thought to be Acevedo. Lempke did not have the opportunity to see Acevedo's photograph, because it had not been brought to

---

[2]Lempke had been a police officer for fifteen years. He has had extensive training in narcotics investigations and identifications. He testified that he made close to 1,000 narcotics arrests, including several hundred arrests for heroin possession.

the scene. Lempke based his identification on a very general description of Acevedo — Hispanic male, five feet, seven inches to five feet, eight inches tall, with facial hair — that he had gleaned from the building manager and from Acevedo's outstanding arrest warrants.

Lempke told the other officers that he thought he saw Acevedo in the apartment. The officers testified that they knocked and announced that they were the police, but did not state that they had an arrest warrant for Acevedo. They then forced the apartment door open. The officers found the kitchen and the combination bedroom-living room empty. There was a smell of marijuana in the apartment. Egan tried to open the bathroom door, but the handle came off in his hand. However, the bathroom door opened and three men, including the defendant, walked out.[3] The police officers detained the men and placed them under arrest for breaking and entering.[4]

As the men were being secured, Lempke walked into the bathroom that he described as "a very small" room with a shower stall. Lempke saw "the end of a plastic bag in the bottom of the [toilet] bowl." The officers lifted the toilet off its foundation and discovered a plastic bag, which contained heroin. Acevedo was nowhere to be found.

The judge found that the officers never "indicated to any defendant that they had a warrant for his arrest." The judge also found that the Commonwealth offered no evidence that the officers tried to ascertain whether the defendants had permission to be in the apartment.

*Discussion.*

1. *Standard of review.* When reviewing the allowance of a motion to suppress, we give substantial deference to the judge's legal conclusions, but independently review the application of constitutional principles to the facts. *Commonwealth* v. *Torres,*

---

[3]Both the Commonwealth and the defendant agree and the record confirms that, contrary to the motion judge's findings, Egan did not open the bathroom door after the men were placed under arrest. However, it is of no consequence, because given our reasoning, *infra*, the police had the authority to open the door and enter the bathroom.

[4]The men were arrested for breaking and entering because this was not their apartment.

433 Mass. 669, 671-672 (2001). See *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002); *Commonwealth* v. *Jones*, 375 Mass. 349, 354 (1978) (judge's legal conclusion "a matter for review . . . particularly where the conclusion is of constitutional dimensions").

2. *Reasonable belief.* The Commonwealth argues that the motion judge erred in holding that the police officers needed a search warrant even though the officers entered the apartment pursuant to a valid arrest warrant for the apartment's resident. According to the Commonwealth, when the police possess a valid arrest warrant for a suspect, art. 14, like the Fourth Amendment to the United States Constitution, only requires that the police have a "reasonable belief," as opposed to probable cause, that the suspect is inside his residence before the police may enter to make an arrest. We agree.

An arrest warrant "encompasses the power to enter a [suspect's] residence for the purpose of executing the warrant." *Commonwealth* v. *Nova*, 50 Mass. App. Ct. 633, 634-635 (2000). See *Commonwealth* v. *Pietrass*, 392 Mass. 892, 897 (1984) (arrest warrant allows police to enter dwelling). A separate search warrant is not required. *Commonwealth* v. *Acosta*, 416 Mass. 279, 281 (1993). See *Commonwealth* v. *Allen*, 28 Mass. App. Ct. 589, 592 (1990) ("A person's home is not a castle against execution of a lawful arrest warrant directed against that person"). Cf. *Steagald* v. *United States*, 451 U.S. 204, 213 (1981) (separate search warrant required to enter third party's residence to execute arrest warrant).

The Supreme Court of the United States has held that for the purposes of the Fourth Amendment, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives where there is reason to believe the suspect is within." *Payton* v. *New York*, 445 U.S. 573, 603 (1980). Most of the circuits of the United States Court of Appeals that have addressed this issue have agreed that, under the *Payton* decision, "police officers entering a residence pursuant to an arrest warrant must demonstrate a reasonable belief that the arrestee lived in the residence, and a reasonable belief that the arrestee could be found within the residence at the time of the entry." *Valdez* v. *McPheters*, 172

F.3d 1220, 1224 (10th Cir. 1999), and cases cited. Every Federal circuit court of the United States Court of Appeals that has addressed the issue, except the Ninth Circuit,[5] has held that the "reason to believe" language was meant to employ a standard less exacting than probable cause.[6] The vast majority of State courts have followed suit.[7]

Whether art. 14 is more stringent than the Fourth Amendment is the issue of first impression. See *Commonwealth* v. *Rivera*, 429 Mass. 620, 623-624 (1999) (whether "art. 14 requires more than a reason to believe that the defendant was within the apart-

[5]See *United States* v. *Harper*, 928 F.2d 894, 896 (9th Cir. 1991) ("police may enter a home with an arrest warrant only if they have probable cause to believe the person named in the warrant resides there").

[6]See, e.g., *Valdez* v. *McPheters*, 172 F.3d 1220, 1224-1225 (10th Cir. 1999) (adopting "reasonable belief" standard); *United States* v. *Route*, 104 F.3d 59, 62 (5th Cir.), cert. denied, 521 U.S. 1109 (1997) ("reason to believe" standard is distinct from "probable cause" and allows "the officer who has already been to the magistrate to secure an arrest warrant, to determine that the suspect is probably within certain premises without an additional trip to the magistrate and without exigent circumstances"); *United States* v. *Risse*, 83 F.3d 212, 216 (8th Cir. 1996) ("the officers' assessment need not in fact be correct; rather, they need only 'reasonably believe' that the suspect resides at the dwelling to be searched and is currently present at the dwelling"); *United States* v. *Lauter*, 57 F.3d 212, 215 (2d Cir. 1995) (probable cause is "too stringent a test"; proper inquiry is "whether there is a reasonable belief that the suspect resides at the place to be entered to execute an arrest warrant, and whether the officers have reason to believe that the suspect is present"); *United States* v. *Edmonds*, 52 F.3d 1236, 1247-1248 (3d Cir.), vacated in part on other grounds, 52 F.3d 1236, 1251 (3d Cir. 1995), cert. denied, 519 U.S. 927 (1996) (although "the information available to the [police] clearly did not exclude the possibility that [the suspect] was not in the apartment, [they] had reasonable grounds for concluding that he was there"); *United States* v. *Magluta*, 44 F.3d 1530, 1535 (11th Cir.), cert. denied, 516 U.S. 869 (1995) (for police "to enter a residence to execute an arrest warrant for a resident of the premises, the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry").

[7]See, e.g., *V.P.S.* v. *State*, 816 So. 2d 801, 802-803 (Fla. Dist. Ct. App. 2002); *State* v. *Northover*, 133 Idaho 655, 659 (Ct. App. 1999); *State* v. *Beal*, 26 Kan. App. 2d 837, 840-841 (2000); *State* v. *Miller*, 342 N.J. Super. 474, 497-498 (2001) (using "objectively reasonable belief" standard); *State* v. *Asbury*, 328 S.C. 187, 191-192 (1997); *Morgan* v. *State*, 963 S.W.2d 201, 204 (Tex. Ct. App. 1998); *State* v. *Blanco*, 237 Wis. 2d 395, 404-406 (Ct. App. 2000). But see *State* v. *Jones*, 332 Or. 284, 290-291 (2001) (requiring probable cause as matter of State constitutional law).

ment to justify a forcible entry" is "a proposition that we do not reach"); *Commonwealth* v. *DiBenedetto*, 427 Mass. 414, 418 (1998) ("This court has not yet decided whether art. 14 . . . requires that police, with a valid arrest warrant, have more than reason to believe a suspect is in a dwelling"). We conclude that art. 14, like the Fourth Amendment, requires that police with a valid arrest warrant have a reasonable belief that the location to be searched is the arrestee's residence, and a reasonable belief that the arrestee is in his residence at the time the arrest warrant is executed.

Our holding is supported by the language of art. 14, practical considerations, and our pre-*Payton* decisions. Article 14 recognizes that "[e]very subject has a right to be secure from all unreasonable searches . . . of . . . his houses," and provides that warrants can be issued only if certain requirements are met. It does not specify, however, what level of certainty the police must have that the suspect is within his residence before entering to execute the arrest warrant. Accordingly, we conclude that the reasonableness requirement of the article's first line governs. *Commonwealth* v. *Smigliano*, 427 Mass. 490, 499 & n.2 (1998) (Fried, J., concurring) ("Reasonableness is . . . the touchstone of art. 14").

Moreover, requiring probable cause would be overly burdensome, "particularly when it may be said that a set routine of looking for the defendant first within his own premises is generally sound." 3 W.R. LaFave, Search and Seizure § 6.1(a), at 228 (3d ed. 1996 & Supp. 2003). *People* v. *Sprovieri*, 95 Ill. App. 2d 10, 14-15, aff'd, 43 Ill. 2d 223 (1969) (most "rudimentary police procedure dictates that a suspect's residence be eliminated as a possible hiding place before a search is conducted elsewhere"). The "reasonable belief" standard protects suspects against "unreasonable searches" because, where the police have a valid arrest warrant, an impartial magistrate has already found probable cause to believe that the suspect committed a crime. *Commonwealth* v. *Allen*, 28 Mass. App. Ct. 589, 592 (1990) ("The determination by a judicial officer of probable cause [for the arrest warrant] acts as a screen between the overzealous official and the citizen"). The "reasonable belief" standard would allow the officer who has already

secured a valid arrest warrant to determine, while on the scene, and based on the information available at the time, whether the suspect is within his residence. *United States* v. *Route*, 104 F.3d 59, 62 (5th Cir.), cert. denied, 521 U.S. 1109 (1997). Furthermore, this standard would prevent a person for whom an arrest warrant has issued from using his own residence as a haven. *Commonwealth* v. *Allen, supra.*[8]

This court has used a *Payton*-like reasonableness test well over a century before the United States Supreme Court adopted a comparable standard as a matter of Federal law. In *Barnard* v. *Bartlett*, 10 Cush. 501, 503 (1852), we essentially adopted a reasonableness standard when we said that an officer who enters a dwelling to serve criminal process on an occupant is "justified, if the officer acted bona fide, and under a *belief* that the [person] was there" (emphasis added). A few years later, this court used the term "reasonable," mandating that the officer have a "reasonable cause to believe" that the subject of the arrest warrant is within the residence. *Commonwealth* v. *Irwin*, 1 Allen 587, 589 (1861). This "reasonable cause to believe" test gained acceptance in later cases and has never been disavowed. *Commonwealth* v. *Reynolds*, 120 Mass. 190, 196 (1876) ("an officer who, holding a warrant against an alleged offender, has reasonable cause to believe that he is within such house, [may] forcibly enter[]"). *Blatt* v. *McBarron*, 161 Mass. 21, 22 (1894) (officer may enter third person's home in search of subject of arrest warrant if officer has "reasonable cause to believe" that suspect is there).

The defendant attempts to distinguish these cases[9] and claims that their validity has been cast into doubt by *Steagald* v. *United*

---

[8]We reject the defendant's argument that adopting a "reasonable belief" standard would be too confusing for the police to apply. The police are already familiar with a similar standard of "reasonable suspicion" based on "specific and articulable facts" used in *Terry*-type investigatory stops. *Terry* v. *Ohio*, 392 U.S. 1 (1968).

[9]The defendant argues that the cases cited by the Commonwealth do not control, because they concern only the right of the police to enter "into the house of a third party for the purpose of enforcing an arrest warrant." The defendant is incorrect. In *Barnard* v. *Bartlett*, 10 Cush. 501, 503 (1852), the court explicitly dealt with the suspect's "own dwelling-house." It is irrelevant that later cases employed the "reasonable cause to believe" standard to police entries into third parties' homes. At that time, the standard was the same

*States*, 451 U.S. 204, 222 (1981), where the Court held that police must obtain a separate search warrant before entering a third party's residence to execute an arrest warrant. However, because the *Steagald* decision concerned only the authority of the police, under the Fourth Amendment, to enter a third person's home, the portions of our earlier cases pertaining to a suspect's own residence remain undisturbed, leaving the "reasonable belief" standard intact.

The police did not have probable cause to believe that Acevedo was in the apartment. However, they did have a "reasonable belief" that apartment no. 401 was Acevedo's dwelling, and that Acevedo was within that dwelling at the time the officers sought to execute an arrest warrant. The building manager informed the officers that Acevedo was the sole lessee, "actively paying rent at that time." On their arrival at apartment no. 401, the police noted that the door was ajar, implying that someone was within. *Commonwealth* v. *DiBenedetto*, 427 Mass. 414, 417 (1998) ("the fact that the police found that the . . . door was ajar justified an expectation that someone was likely to be there"). The police could also tell that the door was barricaded.

Additionally, the police looked through the hole and "observed activity in the apartment . . . that suggested the occupant was home." *Commonwealth* v. *Acosta*, 416 Mass. 279, 282 (1993). Furthermore, the police made a tentative identification of Acevedo before entering the apartment — Lempke looked into the hole and concluded that he saw Acevedo based on the description he obtained from the building manager and from the arrest warrants. That the person Lempke saw turned out to be the defendant does not render Lempke's belief that he saw Acevedo unreasonable.[10] *United States* v. *Risse*, 83 F.3d 212, 216 (8th Cir. 1996) ("the officers' assessment need not in

---

regardless of whether the police sought entry into the suspect's or a third person's home. *Commonwealth* v. *Reynolds*, 120 Mass. 190, 196 (1876).

[10]The defendant contends that the police were unreasonable in relying on Lempke's identification of the defendant as Acevedo, because better practice would have been for the police to bring Acevedo's photograph to the scene. However, the fact that the police could have brought Acevedo's photograph with them or had Ferris or Detective John Collamore (both of whom saw the booking photographs of Acevedo at the police station) look through the hole and identify Acevedo does not mean that the police were unreasonable in relying on Lempke's identification.

fact be correct"). Considering all the circumstances, the police had a reasonable belief that Acevedo rented the apartment and was within it at the time they sought to execute the arrest warrant.[11] The police entry was, therefore, lawful.

3. *Knock and announce.* The defendant contends that the police violated the requirement that they "knock and announce" before entering an apartment to execute an arrest warrant.[12] However, the defendant's motion to suppress made no mention of the "knock and announce" issue, and the defendant never requested permission to amend his motion. Nor was the issue adequately raised during the suppression hearing.

A motion to suppress "shall state the grounds on which it is based and shall include in separately numbered paragraphs all reasons, defenses, or objections then available, which shall be set forth with particularity." Mass. R. Crim. P. 13 (a) (2), 378 Mass. 871 (1979).[13] *Commonwealth* v. *Robles*, 48 Mass. App. Ct. 490, 491 n.1 (2000). This requirement alerts the judge and the Commonwealth to the suppression theories at issue, and allows the Commonwealth to limit its evidence to these theories. There is no reason for the Commonwealth to extend unnecessarily the length of the suppression hearing by presenting evidence on issues not raised by the defense. When a defendant attempts to raise a new issue after the completion of the hearing's evidentiary phase, the evidence on that issue is likely to be "scant" or nonexistent. *Commonwealth* v. *Rivera*, 429 Mass. 620, 623 (1999). Therefore, the doctrine of waiver precludes the defendant from raising a fresh issue after the

---

[11]The defendant argues that the police actions after they entered the apartment indicated that they did not believe that Acevedo was within. However, the test to determine the propriety of the entry considers only the circumstances known to the police at the time of the entry into the residence. *Valdez* v. *Mc-Pheters*, 172 F.3d 1220, 1227 (10th Cir. 1999).

[12]Except in certain limited circumstances, the police "must knock, identify themselves, and state their purpose before entering a dwelling to execute an arrest warrant." *Commonwealth* v. *Allen*, 28 Mass. App. Ct. 589, 594-595 (1990). See *Commonwealth* v. *Jimenez*, 438 Mass. 213, 215-216 (2002), and cases cited; *Commonwealth* v. *Macias*, 429 Mass. 698, 700-701 (1999), and cases cited.

[13]The rule also provides that "[g]rounds not stated which reasonably could have been known at the time a motion is filed shall be deemed to have been waived, but a judge for cause shown may grant relief from such waiver." Mass. R. Crim. P. 13 (a) (2), 378 Mass. 871 (1979).

close of the evidence. See *id.*, and cases cited (waiver doctrine precludes defendant who did not properly alert motion judge to issue from raising it on appeal).

In his motion to suppress, the defendant contended that "(1) there were no factors to justify a threshold inquiry; (2) there was no probable cause for the search; (3) there was no search warrant; and (4) there was no probable cause to execute an arrest warrant and enter the premises." The motion made no mention of any failure to knock and announce prior to entry. The Commonwealth focused its evidence accordingly. Relying on snippets of questions and arguments made by counsel for the codefendant, and on defense counsel's adoption of "all of the issues mentioned by [his] brother attorney" after the close of the evidence, the defendant claims that the "knock and announce" issue, although not set forth in his motion, was "specifically identified" during the suppression hearing. However, the transcript does not support this assertion. The codefendant's counsel's comments were made in the context of an argument concerning the officers' alleged shortcomings in identifying Acevedo, and not as part of a "knock and announce" argument.[14] These "brief comment[s] by [co]defense counsel in

---

[14]COUNSEL FOR THE CODEFENDANT: "And at no time did you say when you knocked on the door 'police warrant' at no time did you is that correct? When you knocked on the door and said 'police,' you didn't say 'warrant?' "

DETECTIVE LEMPKE: "No."

COUNSEL FOR THE CODEFENDANT: "And you never called for Daniel Acevedo is that correct?"

DETECTIVE LEMPKE: "I didn't. I can't say about anyone else."

COUNSEL FOR THE CODEFENDANT: "Is it fair to say that you didn't hear anyone say 'Daniel Acevedo warrant,' or anything to that name?"

DETECTIVE LEMPKE: "I don't recall hearing that, no sir."

In his argument following the officers' testimony, the codefendant's counsel began by acknowledging that this court has not yet determined the applicable standard under art. 14 for verifying the identity of an arrest warrant suspect before entering his residence. He went on to argue that the police were lax in their verification, complaining that the officers did not know Acevedo's skin complexion, were "off by a couple of inches" on his height, and never asked the occupants of the apartment if Acevedo was among them:

"The way that the person wasn't described as a [inaudible] he says somewhere between five feet, six inches or five feet, seven inches, or five feet, eight inches, the person is five feet, nine inches. So, he's off

his argument to the motion judge in support of the suppression motion did not adequately raise the issue." *Commonwealth* v. *Ruggerio*, 32 Mass. App. Ct. 964, 965 (1992). Because the defendant did not properly alert the judge to the "knock and announce" argument, the waiver doctrine precludes him from doing so on appeal.

4. *Destruction of evidence.* Even had the defendant properly preserved the issue, the result would be no different. The requirement that the police knock, identify themselves, and announce their purpose "[b]efore attempting forcibly to enter a private dwelling to execute a warrant," *Commonwealth* v. *Antwine*, 417 Mass. 637, 638 (1994), may be suspended where necessary to "avoid the potential destruction of evidence." *Commonwealth* v. *Macias*, 429 Mass. 698, 701 (1999). See *Commonwealth* v. *Jimenez*, 438 Mass. 213, 216 (2002) (failure to knock and announce justified where there is "fear that a substantial portion of the evidence . . . might be destroyed or secreted"). To justify the unannounced entry, the Commonwealth must show that there is probable cause to believe that the evidence will be destroyed if the knock and announce rule is observed. *Id.* at 216-217. *Commonwealth* v. *Scalise*, 387 Mass. 413, 420 (1982). This showing must be made in advance in an affidavit submitted to the magistrate together with the

---

by a couple of inches possibly on that. He had no idea about skin complexion. And they never announced who they're looking for.

"If [they] announce and say police, you don't have to answer the door. The police have no special right just because they are police for you to open the door and say, 'hello, how are you?' If they have a search warrant, then you have to let them in. If they say, 'a warrant for Daniel Acevedo.' And someone in the back says Danny Acevedo was not there, then you might have something more. But they didn't even announce why they were there, judge. They just said police period.

"There's no indication by Detective Ferris or the detective who just testified that anyone said, 'warrant, looking for Danny Acevedo.' "

The codefendant's counsel summed up by contending that "there is not enough evidence produced by the Commonwealth to believe that this officer believed that the person was Danny Acevedo." At that point, the codefendant's counsel moved on to the "second part," arguing that, even if the police "had enough evidence to get into the apartment," they did not "have a right to go into that toilet." No evidence was presented on the "knock and announce" theory and it was never argued.

warrant application. *Commonwealth* v. *Jimenez, supra.* The showing may also be made after the fact, "if exigent circumstances arise at the threshold of the search [or arrest] justifying both the unannounced entry and the failure to obtain prior judicial authorization." *Id.* at 217. See *Commonwealth* v. *Scalise, supra* at 422 n.8.

In deciding whether enough facts were present to amount to probable cause to believe that the evidence would be destroyed, we "do not examine each fact in isolation, but rather we examine all of the facts together." *Commonwealth* v. *West*, 55 Mass. App. Ct. 467, 470 (2002). Even several factors "innocent of themselves," when combined, may amount to probable cause. *Commonwealth* v. *Fisher*, 54 Mass. App. Ct. 41, 44 (2002). The police officers' expertise and experience may be considered as a factor in the probable cause determination. *Commonwealth* v. *West, supra.* See *Commonwealth* v. *Feijoo*, 419 Mass. 486, 498 (1995) (officer's experience in investigating child abuse is factor supporting probable cause).

In this case, the police knocked and identified themselves, but did not state their purpose before forcibly entering apartment no. 401. That failure to announce their purpose was justified by the officers' concern about the imminent destruction of the evidence. Here, the confidential informant told the police that drugs were being sold out of the apartment, one of the officers looked through the hole in the wall and saw three men in the bathroom, and when the police knocked and identified themselves, they heard movement and a toilet flushing inside the apartment. Considering these facts and reasonable inferences drawn from them, we conclude that the entry was supported by probable cause to believe that the extra time afforded the occupants of the apartment "would allow a significant additional portion of the evidence sought to be destroyed." *Commonwealth* v. *Macias, supra* at 703.

The continuing concern about the destruction of evidence also justified police entry into the bathroom and search of the toilet.[15] Having heard the flushing sounds, the police could have had legitimate concerns that evidence was being destroyed, with

---

[15]Additionally, the police were entitled to enter the bathroom to protect themselves from anyone else who may have been hiding there. Although three people emerged from the bathroom, a fourth could have remained inside. This

perhaps only a brief period of time before all traces would be eliminated by the operation of the plumbing system. The officers were entitled to seize the plastic bag to prevent the destruction of evidence. See *Commonwealth* v. *DeJesus*, 439 Mass. 616, 624 n.8 (2003). The police properly used their expertise in investigating narcotics violations, *Commonwealth* v. *Franco*, 419 Mass. 635, 637 (1995), in deducing that the plastic bag found in the toilet contained contraband: the informant spoke of drug dealing, the apartment door was barricaded, the police heard scurrying and flushing of the toilet inside the apartment (which, the officers knew, was a common method of disposing of narcotics), and on entering the apartment, the police smelled marijuana. Lempke's extensive training and special expertise in narcotics investigations further support the conclusion that the contraband nature of the contents of the plastic bag was immediately apparent to him. See *Commonwealth* v. *Cruz*, 53 Mass. App. Ct. 24, 34-35 (2001) (object's criminal nature may be immediately apparent where special expertise permits officer to recognize contraband). The fact that Lempke could not see heroin in the bag "is all but irrelevant: the distinctive character of the [bag] itself spoke volumes as to its contents — particularly to [his] trained eye." *Texas* v. *Brown*, 460 U.S. 730, 743 (1983). Once the officers discovered the bag, they were entitled to remove it from the toilet bowl and seize it.

*Conclusion.* For the reasons set forth above, we hold that art. 14 requires that police, with a valid arrest warrant, have a reasonable belief that the location to be searched is the suspect's residence, and that the suspect is in his residence at the time the arrest warrant is executed. Furthermore, the defendant waived the "knock and announce" argument, but even if he did not, the entry into the apartment and into the bathroom was justified by the "destruction of evidence" exception. We also conclude that

court has repeatedly recognized that, "subsequent to an arrest, a security check of other rooms in a dwelling is valid in the interest of insuring the safety of the police." *Commonwealth* v. *Bowden*, 379 Mass. 472, 478 (1980). *Commonwealth* v. *Walker*, 370 Mass. 548, 556, cert. denied, 429 U.S. 943 (1976). "[I]t is clear that in light of what the police observed and learned immediately on entering the apartment, they were justified in entering the [bathroom] at least for the purpose of ascertaining whether there was any other person in that room." *Id.*

the police properly seized the plastic bag they discovered in the bathroom.

The order allowing the defendant's motion to suppress is reversed. The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*