NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-873

COMMONWEALTH

vs.

JONATHAN VELEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a motor vehicle stop, the defendant was charged with various gun and drug offenses.  He later moved to suppress evidence on the ground that the stop resulted from selective law enforcement based on his Hispanic ethnicity.  After an evidentiary hearing, a judge of the District Court allowed the motion.  The judge later denied the Commonwealth's motion to reconsider.  The Commonwealth appealed.  We vacate the order allowing the motion to suppress evidence and remand the matter so that the judge may clarify his factual findings and legal conclusions in a manner consistent with this memorandum and order.

Discussion.  On a motion to suppress evidence premised on selective law enforcement, the defendant bears the initial burden of showing a reasonable inference that a police officer's enforcement decision was based, at least in part, on the defendant's ethnicity.  See Commonwealth v. Long, 485 Mass. 711, 723-724 (2020).  This may be shown by the "totality of the circumstances surrounding the stop," id. at 713, which may include, as was the case here, a statistical analysis of the involved officer's pattern of motor vehicle stops, see Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 7-8 (2023) (report from statistician analyzing officer's stop data raised inference of discriminatory law enforcement).

This showing entitles the defendant to an evidentiary hearing at which it is the Commonwealth's burden to rebut the inference that the stop was motivated by such considerations.  See Long, 485 Mass. at 726.  That there was a valid basis for the stop is not enough to rebut the inference, since ethnicity may still have played a part in the officer's decision to stop the defendant as opposed to others engaged in the same violation.  See Robinson-Van Rader, 492 Mass. at 23-24.  Nor can an officer's "simple denial" of ethnic motivation suffice to end the inquiry as "implicit bias may lead an officer to make [ethnicity-based] traffic stops without conscious awareness of having done so."  Long, supra at 734.  Rather, the judge must

2

"carefully assess the officer or officers' credibility and determine -- under the totality of the circumstances, and in light of the factors that created the reasonable inference of discrimination requiring an evidentiary hearing in the first place -- whether the stop was truly made without knowledge or consideration of [ethnicity]" (citation omitted).  Commonwealth v. Stroman, 103 Mass. App. Ct. 122, 132 (2023).

Here, the defendant moved to suppress evidence resulting from the motor vehicle stop on a number of grounds, one of them being selective law enforcement based on ethnicity.  The matter was scheduled for an evidentiary hearing without any prior hearing or ruling on whether the defendant had met his initial burden to raise a reasonable inference of discriminatory law enforcement.  Although the Commonwealth assigns error to this procedure on appeal, it did not object below.  Rather, at the start of the evidentiary hearing, the Commonwealth "reserved the right" to argue at the end that the defendant had not met his initial burden.  Given this acquiescence, the Commonwealth's claim of error on this procedural point is waived.[1]  See Commonwealth v. Silva, 440 Mass. 772, 782-783 (2004) (where defendant failed to properly alert judge of issue in trial

---

[1] In any event, the Commonwealth does not argue that it was prejudiced in this instance, given the judge's ultimate findings, only that the procedure employed could prejudice the Commonwealth.

court, waiver doctrine prevented him from raising it on appeal).
As the Commonwealth does not challenge the substantive point on
appeal -- whether the judge correctly found that the defendant
had met his initial burden -- we turn to the judge's
consideration of the Commonwealth's burden at the evidentiary
hearing.

At the hearing, the Commonwealth presented the testimony of
the officer who initiated the motor vehicle stop of the
defendant, and the defendant presented the testimony and report
of his expert statistician.  In his findings, the judge "greatly
credit[ed]" the testimony of both witnesses, however, we are
left with doubts regarding what specific facts were found by the
judge.

In general, the judge's findings recounted the officer's
observation, shortly after midnight, of a car in front of him
with darkened taillights and a license plate which made it
difficult to see the plate number.  The findings went on to
relate that, after observing the traffic violations, the officer
followed behind the car, which made an evasive maneuver, causing
the officer to activate his blue lights and pull the car over.
The judge specifically noted that "at no time prior to stopping
the vehicle could [the officer] observe the driver."  He made
further specific note that, even after the car pulled over, the
officer "still could not see the driver."  After recounting the

4

facts of the motor vehicle stop, the judge found that the officer's record of motor vehicle stops showed that he stopped Hispanic motorists at a greater rate (42.4 percent) than his peers at the police department (29.4 percent).

In his legal analysis, the judge stated that "the presentation of the Commonwealth was lacking and in no way did it rebut the reasonable inference of profiling." The remainder of the analysis pointed out weaknesses in the expert's report that the Commonwealth failed to challenge. The judge concluded that "this left the court with the unrefuted testimony of [the expert] which was enough to meet the burden set out in Long."[2] It appears that the judge may have conflated the Commonwealth's failure to rebut the statistical data with the Commonwealth's

_____

[2] It is unclear how the judge considered the testimony of the expert to have been "unrebutted," since the judge identified a "glaring hole" in the expert's analysis and had "some serious reservations concerning the 'feeder influences' cited in [the expert's] analysis" and had "further reservations about this methodology, especially, given that Hartford is over 30 miles away."

Although the judge may have been disappointed with the Commonwealth's presentation, he was not bound to accept the expert evidence if he had a basis to doubt its credibility. See Ulin v. Polansky, 83 Mass. App. Ct. 303, 307-308 (2013) (judge as fact finder free to accept or reject expert testimony based on credibility determination). Here, the judge took an active role in questioning the expert regarding his concerns with the report. See Matter of P.R., 488 Mass. 136, 144 (2021) ("judge clearly may ask questions when acting as the trier of fact"). Whether the vulnerability of the evidence was explored by the Commonwealth or the judge himself, assessment of the credibility of the evidence remained with the judge.

failure to rebut the inference of discrimination.  See Stroman,
103 Mass. App. Ct. at 128 (rejecting argument that Commonwealth
cannot meet its burden if statistical data is unrebutted).
Although a statistical analysis standing alone may be sufficient
to raise an inference of selective enforcement, it does not in
itself establish that selective enforcement occurred in a
particular instance.  See Robinson-Van Rader, 492 Mass. at 4
(facts relating to stop sufficient to rebut statistical evidence
reflecting discriminatory policing).

The inquiry at the evidentiary stage is to discern the
"true" or "subjective" motivations of the officer at the time of
the stop.  See Stroman, 103 Mass. App. Ct. at 129, quoting Long,
485 Mass. at 726-727.  For this reason, a judge reviewing a
claim of selective enforcement "must consider the totality of
the circumstances surrounding the claim," Robinson-Van Rader,
492 Mass. at 20, including, for example, the sequence of events
prior to the stop, the manner of the stop, and the safety
interests in enforcing the particular motor vehicle laws at
issue, see Long, supra at 724-725.  Because the legal analysis
did not mention the facts of the stop at all, it is unclear
whether they were considered.

To the extent that the judge's analysis did consider (but
simply failed to discuss) the facts of the stop, it is unclear
how the finding that the officer could not see the driver at any

6

point prior to the stop squares with the ultimate conclusion that the stop was based on the defendant's ethnicity. See Stroman, 103 Mass. App. Ct. at 132 (where judge credited officer's testimony that he did not know race of driver prior to stop, judge appropriately determined that stop, as matter of fact, could not have been race-based).

The defendant suggests that the judge "did not credit [the officer's] self-serving denials that race was not a factor in this traffic stop." But the officer made no such denials of his motivations. Rather, the officer testified that he could not see the driver prior to the stop, and the judge credited this testimony. The defendant goes on to suggest that, despite the judge's general crediting of the officer's testimony, "the motion judge was not convinced by [the officer's] specific denial of being unable to see the driver's race." If that were the case, there needed to be a finding to this effect. Instead, the judge made a contrary finding -- that the officer could not see the driver. Due to the lack of clarity in the findings of fact and analysis, we are not in a position to properly review this matter. See Commonwealth v. Demos D., 497 Mass. 78, 89 (2026), citing Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008) (confusion regarding critical credibility determinations, within sole province of motion judge, left appellate review unavailable). A remand is

7

necessary to allow the judge to clarify his findings and analysis, taking into consideration the totality of the circumstances, in determining whether the Commonwealth had met its burden of rebutting the inference of selective law enforcement.  Accordingly, the order allowing the motion to suppress is vacated, and the matter is remanded to the District Court to clarify the judge's factual findings and legal conclusions in a manner consistent with this memorandum and order.

<u>So ordered</u>.

By the Court (Blake, C.J., Desmond & Singh, JJ.[3]),

*Paul Little*

Clerk

Entered: February 13, 2026.

---

[3] The panelists are listed in order of seniority.