## COMMONWEALTH *vs*. ANGEL KIPP.

No. 01-P-725.

Middlesex. October 8, 2002. - March 24, 2003.

Present: JACOBS, COWIN, & KAFKER, JJ.

*Practice, Criminal,* Findings by judge. *Arrest. Search and Seizure,* Arrest, Probable cause, Consent. *Probable Cause. Constitutional Law,* Search and seizure.

A seizure of keys in the possession of a suspect at the time of his arrest on drug and firearm charges was permitted by G. L. c. 276, § 1, where the keys were potentially evidence of the crime for which the arrest had been made. [631-632]

This court assumed, without deciding, that a protective sweep of a criminal defendant's residence after his arrest on drug and firearm charges was impermissible, but concluded that the subsequent consent by the defendant to a search of his residence was voluntary and was not a product of any prior illegality, where there was not only a break in the nexus between the illegal entry and the request for consent, but also an independent reason why the defendant was inspired to give a consent that he knew he could withhold. [632-636]

INDICTMENTS found and returned in the Superior Court Department on October 1, 1998.

A pretrial motion to suppress evidence was heard by *S. Jane Haggerty*, J., and the cases were tried before *Wendie I. Gershengorn*, J.

*Jane Larmon White*, Committee for Public Counsel Services, for the defendant.

*Edward C. Dorsey*, Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant appeals from his convictions, after a jury trial, of trafficking in cocaine in an amount over 200 grams, G. L. c. 94C, § 32E(*b*)(4), trafficking in heroin in an amount over twenty-eight grams, G. L. c. 94C, § 32E(*c*)(2), and two counts of unlawful possession of a firearm, G. L. c. 269, § 10(*a*).

He claims that it was error to deny his motion to suppress evidence found on him during a search incident to arrest, as well as evidence obtained as the result of a protective sweep of his residence followed by a consensual search. We determine that evidence was properly obtained from the defendant during a search incident to an arrest. See G. L. c. 276, § 1. We assume, without deciding, that the protective sweep of the defendant's residence was impermissible, but conclude that the subsequent consent by the defendant to a search of his residence was voluntary and was not a product of any prior illegality. Accordingly, we affirm.

1. *Material facts.* Absent clear error, we rely on the motion judge's findings of fact, reserving to ourselves the review of ultimate legal conclusions to be drawn from such findings. *Commonwealth* v. *Accaputo*, 380 Mass. 435, 448 n.18 (1980). *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 312 (1992). We supplement the judge's findings where appropriate with uncontested evidence presented at the suppression hearing. *Commonwealth* v. *Rivera, supra.* This evidence helps present a more complete picture of the events, but does not affect the outcome.

The case commenced when Carmen Rosario called 911 to summon the Lowell police to her apartment at 345 Hildreth Street. When the police arrived, she explained that a man known to her as "Tuleen" was storing drugs and guns in her apartment, and she feared that she would be implicated. She directed an officer to a green duffel bag that contained drugs, guns, and various other drug paraphernalia. Knowing that "Tuleen" was the defendant, the police showed Rosario an array of photographs, from which she identified him as the owner of the green duffel bag.

With this information, police detectives went to the defendant's residence. The defendant and his wife, Felicita Reyes, were outside. The police arrested the defendant,[1] conducted a pat frisk, and found a beeper, money and a loop of keys. Two of the keys were later identified by Rosario as keys to the exterior and interior doors of her apartment. When the defendant was ar-

---

[1]The defendant does not challenge the arrest itself.

rested, he spoke to his wife in Spanish, a language not spoken by the officers present, and Reyes went immediately into the couple's apartment. Two officers accompanied her inside, one sitting with her at the kitchen table, the other conducting a sweep of the apartment. During the sweep, a blue money bag was observed.[2]

The defendant was taken to the police station. Reyes was not arrested, but voluntarily accompanied the police to the station. The defendant was given Miranda warnings and agreed to speak to the police, but refused to consent to a search of his apartment. At this point, communications with the defendant were turned over to Officer Rivera, a Spanish-speaking officer known to the defendant. Officer Rivera stated to the defendant that the police had located a money bag within the defendant's apartment; they would apply for a search warrant; if they searched pursuant to a warrant, they would damage the apartment; if, however, the defendant consented to a search, the police would show a little courtesy and not be destructive; and, if drugs were found on the premises, the defendant's wife would also be arrested. Shortly after this conversation, the defendant consented to a search of his home. The defendant testified at the suppression hearing regarding his giving of consent to Officer Rivera: "So, I say, I'm going to do it for you because you're talking to me like a man."

Officer Rivera then spoke to Reyes, giving her essentially the same information that he had given to the defendant. Reyes also consented to a search. Pursuant to the consents obtained from the defendant and Reyes, the police searched the apartment and seized both a scale box and the blue money bag which contained $7,000. They did not find narcotics.

2. *The search incident to arrest.* We are not persuaded by the defendant's argument that seizure of the keys during the search of the defendant at the time of his arrest was improper. "A search conducted incident to an arrest may be made only for the purposes of seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made,

---

[2]It is unclear from the findings and evidence whether the police looked into the blue money bag or took temporary possession of it at that time. In light of our rulings below, this uncertainty is of no consequence.

in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape." G. L. c. 276, § 1. Property seized in violation of the statute is not admissible in evidence. *Ibid.* The defendant argues that the Commonwealth failed to establish the required nexus between the drug and firearm offenses for which he was arrested and the keys that were in his possession.

Probable cause to arrest the defendant for the offenses in question was provided by the statements of Rosario. She identified the defendant as the owner of the green duffel bag with contraband which the defendant, despite her protests, kept at her apartment. The scope of a permissible search incident to an arrest is defined in part by the crime or crimes for which the suspect was arrested. See *Commonwealth* v. *Stafford,* 18 Mass. App. Ct. 964, 965 (1984). Here, the crime involved the possession of unlawful items stored not at the suspect's own residence, but rather at the apartment of another. The likelihood that the defendant would store the contraband at premises controlled by Rosario without having his own means of access to those premises was small to non-existent. Therefore, it was reasonable for the police to view the loop of keys found on the defendant[3] as likely to include keys to Rosario's apartment and, if so, as evidence that corroborated her statements that the defendant was the owner of the green duffel bag. The keys were potentially "evidence of the crime for which the arrest has been made," and accordingly their seizure was permitted by G. L. c. 276, § 1.

3. *The consent to search.* The Commonwealth does not press the proposition that the sweep might have been justified as a search for evidence of the crimes for which the defendant was arrested. See *Commonwealth* v. *Olivares,* 30 Mass. App. Ct. 596, 600 (1991). It does argue, however, that the defendant's statement in Spanish to his wife, followed immediately by her entry into the apartment, justified reliance on an exception to the warrant requirement that permits a quick and limited search

---

[3]The judge was entitled to disregard the testimony of the defendant and his wife that the keys were taken from their apartment and instead credit the testimony of the police that they were obtained during a pat frisk of the defendant.

of premises incident to an arrest to protect the safety of police officers and others. See *Maryland* v. *Buie*, 494 U.S. 325, 327 (1990); *Commonwealth* v. *Dubois*, 44 Mass. App. Ct. 294, 296 (1998). Because we assume, without deciding, that the sweep of the defendant's residence was unlawful, the Commonwealth cannot rely on the proposition that the blue money bag was lawfully observed because it was in plain view. See *Commonwealth* v. *DeJesus*, 56 Mass. App. Ct. 523, 534 (2002). We proceed to consider whether the use by the police of their observations of the blue money bag invalidated the subsequently obtained consent to search the premises.

The police obtained separate consents from the defendant and Reyes to search the apartment. Either consent, if validly obtained, would be sufficient. See *Commonwealth* v. *Noonan*, 48 Mass. App. Ct. 356, 362 (1999). The defendant asserts that both consents were improperly obtained for two reasons, either of which would be adequate to invalidate them: first, they were products of the impermissible sweep of the apartment at the time of the defendant's arrest; and, second, they were otherwise rendered involuntary by virtue of threats and misrepresentations on the part of the police.

"When consent to search is obtained through exploitation of a prior illegality, particularly very close in time following the prior illegality, the consent has not been regarded as freely given." *Commonwealth* v. *Midi*, 46 Mass. App. Ct. 591, 595 (1999). Evidence gathered during a search brought about by such compromised consent is considered tainted by the illegality and is, therefore, inadmissible. *Ibid.* If, however, there is an attenuation between the prior illegality and the consent, the consent is cleansed of the effect of the prior illegality and is deemed valid. See *Brown* v. *Illinois*, 422 U.S. 590, 603-604 (1975); *Commonwealth* v. *Yehudi Y.*, 56 Mass. App. Ct. 812, 817 (2002). We take this to mean that the consent is valid if it can rationally be determined that it did not come about by virtue of the prior illegality, but rather was given for reasons independent of the earlier unlawful act or event.

Attenuation can occur by reason of lapse of time, intervening circumstances or a disconnection between the prior illegality and the person giving consent, and it is the Commonwealth's

burden to prove that adequate attenuation has taken place. *Commonwealth* v. *Midi, supra.*

We first consider whether the defendant's consent was voluntary. If it was, we do not need to consider the validity of his wife's consent. The motion judge did not address directly the relationship between the sighting of a blue money bag in the defendant's residence during the impermissible sweep and the receipt of the defendant's consent. Nevertheless, based on the judge's subsidiary findings, we are satisfied that the observation by the police of the blue money bag did not materially influence the defendant's consent, and that the taint of the prior unlawful entry had dissipated by the time that the defendant gave consent to a subsequent search.

The defendant, Reyes, and Officer Rivera each testified at the suppression hearing. The defendant testified regarding his conversation with Officer Rivera, including the references to destruction at the premises, the possible charging of his wife, and the observation of the money bag.[4] He testified further that he told Officer Rivera that he would consent because Rivera spoke to him "like a man."

The judge found that the defendant was given Miranda warnings and that he understood them, a conclusion bolstered by the defendant's prior experience with the criminal justice system. That the defendant understood his rights is demonstrated further by his initial refusal to consent. The evidence supports the judge's determination that the defendant was motivated to consent by his knowledge that drugs would not be found at his apartment, and that the absence of drugs at that location would have the effect of removing suspicion from his wife. It was for these reasons that the defendant consented, not because a prior illegality rendered the withholding of consent futile. More than two hours had passed since the unlawful sweep, and the evidence does not sustain, and certainly does not compel, a conclusion that the defendant consented because the police had observed the blue money bag. The circumstances of *Com-*

---

[4]The testimony conflicted on the subject of the money bag. The defendant testified that Officer Rivera told him that the police had already found the money. Officer Rivera testified that he stated that a money bag had been observed, but that he did not mention money.

monwealth v. *Yehudi Y.*, *supra* at 818, wherein this court found "no break in the nexus between the illegal entry and the request for consent," were quite different. Here, there was not only a "break in the nexus," but also an independent reason why the defendant was inspired to give a consent that he knew he could withhold.

The defendant alternatively asserts that irrespective of the prior illegality, his consent was not voluntary. He points to various statements made by Officer Rivera, apart from the reference to observation of the money bag, that he claims effectively pressured him to consent. Whether consent is voluntary is a question of fact to be decided on a case by case basis. *Commonwealth* v. *Robinson*, 399 Mass. 209, 217 (1987). "When the Commonwealth relies on consent as the basis for a warrantless search, 'it must demonstrate consent unfettered by coercion, express or implied . . . [which is] something more than mere acquiescence to a claim of lawful authority.' " *Commonwealth* v. *Podgurski*, 44 Mass. App. Ct. 929, 930-931 (1998), quoting from *Commonwealth* v. *Robinson, supra.*

As we have indicated, the defendant had his own reasons for concluding that consent was in his interest. Whether it in fact turned out to be the wiser course is not the question. It is always tempting to look back after a conviction and posit that a consent that seemed sensible at the time should in retrospect not have been given. The evidence justifies the judge's finding that this consent was freely given because the defendant "knew that there were no drugs in his home and he wished to remove the cloud of suspicion over his wife as expeditiously as possible."

This conclusion is not altered by the fact that the defendant was in custody, see *Commonwealth* v. *Aguiar*, 370 Mass. 490, 496 (1976), or by anything said by Officer Rivera. That the officer announced his intention to seek a warrant in the absence of consent did not render that consent invalid. *Commonwealth* v. *Deeran*, 364 Mass. 193, 196 (1973). Whether observation of the blue money bag was so important to the establishment of probable cause that its elimination as a permissible basis for the warrant application (by virtue of the unlawful entry) would have prevented the warrant from issuing did not need to be decided at the police station; Officer Rivera stated only that the

police would seek a warrant, a presumably accurate prediction of what would occur absent consent.

Likewise, the statement that Reyes could be arrested if drugs were found in the apartment was an accurate statement of possible consequences regardless whether the drugs were found pursuant to a warrant or by means of a consensual search. See *Commonwealth* v. *Buchanan*, 384 Mass. 103, 107 (1981). The threat that execution of a search warrant could be very disruptive to the couple's personal belongings was highly improper. Under other circumstances, a prediction of police lawlessness could be sufficiently overbearing to render a consent involuntary. See *Commonwealth* v. *Greenberg*, 34 Mass. App. Ct. 197, 202 (1993). Here, however, the evidence strongly suggests that the defendant's consent was not motivated by a desire to protect the apartment and the judge's finding that this consideration did not cause the defendant to consent was warranted. We are also persuaded by the defendant's own testimony at the suppression hearing that he consented because Officer Rivera was the only officer to "talk to him like a man" and because he had nothing to hide at his apartment. Because we decide that the defendant's consent was voluntary, it is unnecessary to inquire into the validity of the consent given by Reyes.

4. *Conclusion.* We conclude that the loop of keys was properly taken from the defendant in the course of a search incident to an arrest under G. L. c. 276, § 1. We determine further that even if the initial entry into the defendant's apartment were unlawful, that illegality did not taint the defendant's subsequent consent, nor was that consent rendered involuntary for any of the reasons set forth by the defendant.

*Judgments affirmed.*