NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1457                                          Appeals Court

COMMONWEALTH  vs.  WALTER KOMNENUS.

No. 13-P-1457.

Middlesex.     November 13, 2014. - June 30, 2015.

Present:  Green, Wolohojian, & Blake, JJ.


Controlled Substances.  Practice, Criminal, Motion to suppress,
    Required finding, Instructions to jury.  Consent.  Search
    and Seizure, Consent, Fruits of illegal search, Protective
    sweep.  Constitutional Law, Search and seizure.




    Indictment found and returned in the Superior Court
Department on November 15, 2011.

    A pretrial motion to suppress evidence was heard by
Elizabeth M. Fahey, J., and the case was tried before Kimberly
S. Budd, J.


    Julie A. Baker for the defendant.
    Matthew Bailey, Assistant District Attorney, for the
Commonwealth.


    GREEN, J.  On appeal from his conviction of trafficking in

cocaine in violation of G. L. c. 94C, § 32E(b)(1), the defendant

claims error in the denial of his motion to suppress evidence

seized from his apartment following a warrantless entry by police.  We conclude that the motion judge correctly denied the defendant's motion to suppress, and affirm the judgment.[1]

Background.[2]  At approximately 8:15 P.M. on August 3, 2011, Detective Robert Hall of the Everett police department received a call from Sergeant James Hyde of the Somerville police department.  Sergeant Hyde reported that he had just arrested two individuals on cocaine-related charges and that one of the individuals told Hyde that he had, within the previous thirty minutes, purchased cocaine from the defendant.  That arrestee also said that the sale occurred in the defendant's third-floor apartment of a brown three-family home on Broadway in Everett, which he described as having a sign reading "Sonny and Sons Construction" (or words to that effect), and that the defendant had a criminal history, including a Federal cocaine trafficking offense.

---

[1] As discussed below, we reject the defendant's claim that the evidence at trial was insufficient to support his conviction, and discern no merit in his claim that the judge erred in declining the defendant's request for a Bowden instruction.  See Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980).

[2] We relate the facts as found by the motion judge, supplemented by uncontroverted evidence presented at the motion hearing and apparently credited by the motion judge.  See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).

Detective Hall ran the defendant's board of probation (BOP) record, which contained more than eighty entries, and confirmed that the defendant had a Federal cocaine trafficking offense on his record. Though the BOP reflected a Boston residence for the defendant, an internal Everett police department database and the defendant's registry of motor vehicles record both listed his Everett residence at 171 Broadway, third floor. Detective Hall, in plain clothes, drove to that address and confirmed that it was a two and one-half story brown home. On arrival, he observed that the third-floor lights were on,[3] and ran the records for a Honda Accord automobile parked on the street and found that it was registered to the defendant. Detective Hall then drove to a nearby McDonald's where he spoke with four other police officers, some in uniform and some in plain clothes.

After discussing a plan, the five officers drove to the vicinity of 171 Broadway and parked near, but out of sight of, the residence. At the request of Detective Hall, Officer Anthony DeNuccio, who was in uniform, rang the doorbell and, when the defendant answered the door, informed him (falsely) that his car had been in an accident. DeNuccio then asked the

---

[3] We recite the description of the building (as having "[two and one-half] stories") and the defendant's apartment (as located on the "third" floor) as set forth in the motion judge's findings. Neither party has challenged the judge's findings concerning the physical characteristics of the building or the location of the defendant's apartment.

defendant to come outside. Once the defendant and Officer DeNuccio were on the sidewalk near the defendant's car, Detectives Hall, now wearing a jacket that said "police" on it, and Richard Connor, who was in uniform, approached. Detective Hall informed the defendant that his car had not actually been in an accident but that Hall instead was conducting an investigation into the distribution of cocaine, and had information that cocaine was being sold from the defendant's apartment.

Detective Connor read Miranda warnings to the defendant, who responded that he understood the warnings. The defendant asked if he was under arrest. Detective Hall told the defendant that he was not under arrest and that he was free to leave or stay, but that the officers were going to go upstairs to the defendant's apartment to secure it, pending application for, and issuance of, a warrant to search the apartment. Detective Hall told the defendant that "he could come up or he could stay down," but he did not ask the defendant at that time for consent to enter or search the apartment. Detective Connor then pat frisked the defendant, and four or five officers went upstairs to his apartment, accompanied by the defendant. The motion judge found that the defendant went with the police to his apartment "voluntarily, notwithstanding some anxiety."

When the police and the defendant reached the apartment, the police entered it, calling out "police" in order to alert any occupants who might have been inside. Upon entering, the officers observed that the apartment was small; it consisted of only a kitchen, a bedroom, a combination bedroom-living room, and a bathroom. The officers "peeked" into each room for a few seconds, and determined that the apartment was unoccupied. The defendant sat down at the kitchen table while the officers stood in the kitchen. Within the defendant's hearing, Detective Hall telephoned Sergeant Hyde of the Somerville police. He informed Sergeant Hyde that he was in the defendant's home with the defendant and that he needed Sergeant Hyde to provide the information that he had in order for Detective Hall to prepare the warrant affidavit. While Detective Hall was still engaged in his telephone conversation with Sergeant Hyde, the defendant "blurted out" (without having been asked any question), "I have some stuff. Can I talk to you?" When asked what he meant, he responded, "I have [fourteen] grams of cocaine as I get high sometimes with my lady friend." This was within five to ten minutes after the police entered the apartment with the defendant. The motion judge found that the defendant's spontaneous disclosure that he had cocaine in the apartment was made knowingly and voluntarily, at a time when he was not in custody and not in response to questioning by police.

The defendant informed the officers that the cocaine was in the room off the kitchen. The defendant and Detective Hall walked into that room, where the defendant showed the officers a small box containing rocks of what looked to be crack cocaine. Detective Hall asked the defendant if there were any more drugs in the house, and the defendant responded that there were none. Shortly thereafter, Detective Connor read a consent to search form to the defendant, which the defendant signed at approximately 9:43 P.M. The police then searched the apartment (excluding a bedroom the defendant said was his daughter's). They found and seized a box of sandwich bags, scissors, a digital scale, pre-cut baggies, two police scanners, some bank statements in the defendant's name and address, and $1,660 in cash.[4] The officers then arrested the defendant.

Discussion. 1. Motion to suppress. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent

---

[4] In response to a question about additional money in the apartment, the defendant stated that there was some in the mattress. Detective Hall recovered $3,000 from the mattress, but then returned it to the defendant. In her order, the motion judge stated that she did "not credit" the reasons given by Detective Hall to explain his return of the money to the defendant, or his "executive decision" to do so. However, her comment appears to leave intact her finding that Detective Hall in fact retrieved that sum from the mattress and returned it to the defendant; his reasons for returning the money to the defendant are immaterial to the question of suppression of the evidence seized from the apartment.

review of [her] ultimate findings and conclusions of law.' . . . The judge determines the weight and credibility of the testimony. '[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found'" (citations omitted). Commonwealth v. Scott, 440 Mass. 642, 646 (2004).

We agree with the defendant that the officers' warrantless entry into his apartment was unlawful. The record does not support the finding of the motion judge that the defendant consented to the entry. "Although consent may be implicit, see Commonwealth v. Voisine, [414 Mass. 772, 783 (1993)], and the police need not utter any 'magic words' of request before entering, the Commonwealth must establish that the occupant's words or conduct amounted to something other than mere acquiescence to a claim of authority or simple resignation to the perceived power of uniformed officials." Commonwealth v. Rogers, 444 Mass. 234, 237-238 (2005). In the present case, the police did not request the defendant's consent to enter his apartment, and the defendant did not indicate by words or action that the police were welcome to do so. Compare the cases described in Commonwealth v. Rogers, supra at 240-241. Instead, Detective Hall simply notified the defendant of the officers' intention to enter his apartment for the purpose of securing it from within, and advised him that he could accompany them or

not.  In the circumstances, the defendant's failure to object to Detective Hall's declaration of intent to enter his apartment, with or without him, suggests nothing more than "mere 'acquiescence to a claim of lawful authority,'" Commonwealth v. Tyree, 455 Mass. 676, 695 (2010), quoting from Commonwealth v. Sanna, 424 Mass. 92, 97 (1997), insufficient to establish his voluntary consent to allow police to enter and search the apartment.  See Commonwealth v. Gray, 465 Mass. 330, 344 (2013).[5]

That said, the illegal entry itself, and the protective sweep that immediately followed, yielded no evidence.  Instead,

_____

[5] The entry likewise cannot be justified on the alternative ground of probable cause and exigent circumstances, as suggested by the Commonwealth on appeal.  In assessing whether exigent circumstances justify a warrantless entry to prevent destruction of evidence, "[f]irst we consider whether sufficient basis existed just prior to the police approach to the premises, . . . If not, we shift our inquiry to the time when the police interacted with the defendant at his door."  Commonwealth v. McAfee, 63 Mass. App. Ct. 467, 473 (2005).  Before Officer DeNuccio knocked on the defendant's door, no exigent circumstances justified the officers' entry into the defendant's apartment.  There was no evidence of a "specific threat that drugs inside the apartment were in imminent danger of being destroyed or that a police presence outside the apartment until a warrant could be obtained would not have prevented any such destruction."  Commonwealth v. DeJesus, 439 Mass. 616, 620 n.3 (2003).  Moreover, even after the initial interaction by police with the defendant, but prior to their entry into his apartment, there was no apparent threat that the defendant would destroy evidence within the apartment; the defendant was outside the apartment and, in any event, the police had probable cause to arrest him based on the information provided by his arrested customer regarding a recent purchase of drugs from him.  There was likewise no evidence to support an objectively reasonable belief that anyone other than the defendant was in the apartment.  See Commonwealth v. Gray, supra at 345.

the evidence that was the subject of the motion to suppress was either volunteered by the defendant or the product of a search conducted after obtaining his consent.  The defendant nonetheless argues that the evidence should be suppressed as "fruit of the poisonous tree."  See Wong Sun v. United States, 371 U.S. 471, 487-488 (1963).  "When consent to search is obtained through exploitation of a prior illegality, . . . the consent has not been regarded as freely given."  Commonwealth v. Midi, 46 Mass. App. Ct. 591, 595 (1999); Commonwealth v. Yehudi Y., 56 Mass. App. Ct. 812, 817 (2002).  "Evidence gathered during a search brought about by such compromised consent is considered tainted by the illegality and is, therefore, inadmissible. . . .  If, however, there is an attenuation between the prior illegality and the consent, the consent is cleansed of the effect of the prior illegality and is deemed valid. . . .  We take this to mean that the consent is valid if it can rationally be determined that it did not come about by virtue of the prior illegality, but rather was given for reasons independent of the earlier unlawful act or event."  Commonwealth v. Kipp, 57 Mass. App. Ct. 629, 633 (2003).

In the present case, the record supports the finding of the motion judge that the defendant's spontaneous disclosure of the presence of crack cocaine in his apartment was made knowingly and voluntarily, so that the evidence obtained by police from

the defendant's apartment was not the result of any exploitation by police of their unlawful entry, but instead resulted from the defendant's spontaneous disclosure. His subsequent written consent to search the apartment was, as the motion judge also found, voluntary and free of coercive influence by the police.

As a threshold matter, as we have observed, the entry in the present case, and the brief protective sweep that immediately followed it, did not reveal any incriminating evidence and did not contribute in any identifiable way to the discoveries that followed. See Commonwealth v. Ocasio, 71 Mass. App. Ct. 304, 310 (2008).[6] The defendant had been advised of his Miranda rights, and had been told he was not under arrest. The defendant disclosed the presence of cocaine in the apartment spontaneously and not in response to interrogation or prompting by the police. See Commonwealth v. Ferrer, 68 Mass. App. Ct. 544, 546-547 (2007).[7] Detective Hall's telephone call in the defendant's presence in furtherance of his intention to obtain a

---

[6] The case accordingly is unlike Commonwealth v. Midi, supra at 595, in which the discovery of marijuana and bullets during a preliminary (albeit unlawful) search of the defendant's apartment prompted police to request consent for a more thorough search.

[7] In that regard, the present case stands in contrast to Commonwealth v. Porter P., 456 Mass. 254, 275 (2010), in which the juvenile had been arrested and handcuffed, following seizure of a firearm during an unlawful warrantless search, at the time he spontaneously made an incriminating statement to police.

search warrant does not bear heavily on the voluntariness of either the defendant's spontaneous statement or his subsequent consent to search the apartment.  See Commonwealth v. Deeran, 364 Mass. 193, 196 (1973); Commonwealth v. Harmond, 376 Mass. 557, 561 (1978).  Moreover, the defendant had extensive experience with police, as his BOP record revealed; indeed, his impulse to reveal that he possessed cocaine for personal use suggests an awareness of the distinction between possession and trafficking, and a desire to mitigate the consequences he anticipated would follow the issuance of a warrant for the search of his apartment.  The motion judge found that the defendant's disclosure that he had cocaine in the apartment was free and voluntary.  In short, though the entry (and therefore, the continued presence by police in the defendant's apartment) was unlawful, in the totality of the circumstances the police cannot be said to have exploited the illegality of their entry into the apartment to obtain the evidence the defendant seeks to suppress, because the illegality bears no apparent causal relationship to the defendant's spontaneous disclosure of his possession of cocaine.  That disclosure, in turn, stands as an "intervening circumstance" attenuating any connection between the unlawful entry and the defendant's subsequent written consent to the further search of his apartment.  Commonwealth v.

Fredette, 396 Mass. 455, 460 (1985). The motion to suppress was properly denied.

2. <u>Sufficiency of the evidence</u>. We reject the defendant's separate contention that he is entitled to dismissal of the indictment because the evidence at trial was insufficient to establish his intent to distribute the drugs found in his apartment. Viewing the evidence in the light most favorable to the Commonwealth, see <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 677 (1979), the quantity of crack cocaine found in his apartment (16.78 grams), combined with the absence of smoking paraphernalia in the apartment and the presence of a digital scale, two police scanners, and small plastic bags with cut-off corners, sufficed to establish the defendant's intent to distribute, as further explained by expert testimony at trial. See, e.g., <u>Commonwealth</u> v. <u>Wilson</u>, 441 Mass. 390, 401 (2004); <u>Commonwealth</u> v. <u>Miller</u>, 17 Mass. App. Ct. 991, 991 (1984); <u>Commonwealth</u> v. <u>Rivera</u>, 31 Mass. App. Ct. 554, 555-556 (1991).

3. <u>Bowden instruction</u>. Finally, there is no merit to the defendant's contention that the trial judge erred in refusing his request for a so-called <u>Bowden</u> jury instruction. The defendant did not object to the instructions as administered; we accordingly review his claim for a substantial risk of a miscarriage of justice. See <u>Commonwealth</u> v. <u>Bolling</u>, 462 Mass. 440, 452 (2012). No such risk is apparent. As a threshold

matter, a judge is not required to instruct a jury on any "claimed inadequacy of a police investigation." Commonwealth v. Boateng, 438 Mass. 498, 507 (2003). Bowden instead holds only that a judge "may not remove the issue from the jury's consideration." Ibid., quoting from Commonwealth v. O'Brien, 432 Mass. 578, 590 (2000). In any event, the defendant did not develop evidence, by cross examination or otherwise, in support of the theory on which he based his requested instruction: that police mishandled the cocaine seized from the defendant's apartment, resulting in inaccuracies in its weight. Moreover, though the judge imposed no limitation on the defendant's ability to argue claimed inadequacies by the police in his closing, defense counsel made no argument that police mishandled the cocaine or failed to follow proper procedures. We discern no substantial risk that justice miscarried.

Judgment affirmed.