NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-688

COMMONWEALTH

vs.

JASON OLIVER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court judge denied the defendant's motion to suppress the fruits of an entry into his home to serve an arrest warrant, as well as the fruits of a subsequent consent search of the home, including a firearm and cocaine. The defendant then entered conditional guilty pleas to charges of unlawful possession of a firearm and ammunition and possession of cocaine with intent to distribute. The defendant now appeals the order denying his motion to suppress, contending that (1) the entry into his home was based on unreliable hearsay and was accomplished without police knocking and announcing themselves; (2) police conducted a protective sweep of the home without reasonable basis; (3) his girlfriend's subsequent consent to a

search of the home was coerced and thus invalid; (4) the judge at the suppression hearing inappropriately allowed the Commonwealth to present much of its evidence on rebuttal; and (5) the claimed dismissal of certain Rhode Island charges against the defendant required suppression of the evidence here. We affirm.

Background.  A Rhode Island court issued an arrest warrant for the defendant on four felony cocaine charges.  Because the defendant's last known address was in Fall River, the Rhode Island State police (RISP) placed the arrest warrant into a tracking system for extradition.  That system listed the defendant's name, date of birth, social security number, description, Massachusetts license number, and Fall River address ("the address"), as well as his alias, "Gunz."

The warrant came to the attention of the Massachusetts State police (MSP), who were further informed that the defendant was president of the newly formed Massachusetts chapter of the Pagans, a motorcycle club, was highly likely to have guns in his possession, and had been placed at the address several times.  A MSP lieutenant applied to a District Court and obtained a fugitive arrest warrant.  The lieutenant also learned from a Registry of Motor Vehicles (RMV) record check that the defendant listed the address on his driver's license.  Police then executed the warrant at the address, arrested the defendant,

discovered a firearm during a protective sweep, obtained his girlfriend's signature on a form consenting to a search of the home, conducted the search, and seized the firearm, as well as cocaine found in a bathroom. The defendant was indicted, and filed a motion to suppress, which the judge denied after a lengthy evidentiary hearing.

We address the defendant's five claims in turn. In reviewing the suppression ruling, "we adopt the motion judge's factual findings absent clear error," Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008), and "conduct an independent review of his ultimate findings and conclusions of law." Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002).

1. Entry into home. The defendant asserts that police lacked a reasonable belief that he lived at the address and that he was home at the time. Police may enter a home to serve an arrest warrant if they "have a reasonable belief that the location to be searched is the arrestee's residence, and a reasonable belief that the arrestee is in his residence at the time the arrest warrant is executed." Commonwealth v. Gentile, 466 Mass. 817, 818 (2014), quoting Commonwealth v. Silva, 440 Mass. 772, 778 (2004). "[T]he 'reasonable belief' standard is 'less exacting than probable cause.'" Gentile, supra, quoting Silva, supra at 776-777. To be reasonable, a belief "must be supported by specific articulable facts that, based on the

3

totality of circumstances, permit a reasonable inference" that a matter is true (quotation and citation omitted). Gentile, supra at 822.

Here, the judge found that police had a reasonable belief that the defendant lived at the address. The Rhode Island warrant listed it as the defendant's last known address, and the RISP informed the MSP that "we have placed him at this address several times." Although the MSP lieutenant did not know the details of the RISP investigation, the judge interpreted the RISP statement to mean that the RISP had observed the defendant at the address several times, and we cannot say this inference was unreasonable. The MSP's RMV record check separately confirmed that the defendant listed the address as his residence.

Although the defendant argues that a reasonable belief cannot be based on hearsay alone, he cites no authority supporting that proposition, and Gentile is to the contrary.[1] The defendant's further suggestion that the information provided

---

[1] In Gentile, a trooper saw the defendant's Massachusetts identification card listing an apartment address in Leominster, and the trooper confirmed that the address matched what was listed on the defendant's driver's license. Gentile, 466 Mass. at 821. The court stated, "[t]he defendant correctly does not challenge the judge's finding that the officers had a reasonable belief that the defendant resided at the apartment." Id. at 822.

by the RISP was akin to an uncorroborated informant's tip, is inconsistent with Commonwealth v. Castillo-Martinez, 104 Mass. App. Ct. 22, 26 (2024).  The MSP could reasonably rely on the veracity of statements by the RISP, see id., which stated as the basis of knowledge that "[w]e have placed him at this address several times."[2]  Moreover, the MSP obtained corroboration of the address from the RMV.  See Commonwealth v. Lora, 43 Mass. App. Ct. 136, 143 (1997) (RMV address records reliable).  Finally, the lieutenant testified that, in accordance with usual practice before executing an arrest warrant for a potentially violent suspect, "a work-up on [the] house . . . was done, and we expected four people in that place, possibly," including the defendant.[3]  All this together supported a reasonable belief that the defendant lived at the address.

---

[2] We need not address the defendant's argument that the collective knowledge doctrine does not apply.  See Commonwealth v. Privette, 491 Mass. 501, 503 (2023).  The Commonwealth does not rely on it here, nor did this court in Castillo-Martinez, supra.

[3] Although the judge's findings did not specifically mention the work-up, the judge found that police had information suggesting that four people would be present, and the judge expressly credited other aspects of the lieutenant's testimony.  Also, a MSP sergeant, who the judge found "credibl[e] in all respects," testified that before the warrant was executed, he had conducted a "site visit."  We think the testimony may be considered.  See Commonwealth v. Garner, 490 Mass. 90, 94 (2022); Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

The judge also found that police had a reasonable belief the defendant would be at home when the warrant was executed, which occurred at 6 A.M. "[T]he early morning hour alone . . . sufficed to warrant a reasonable belief that the defendant was home." Gentile, supra at 824. To be sure, such a belief might be unreasonable where there is "contrary evidence regarding the suspect's known schedule" (quotation and citation omitted). Id. But there was no such evidence here. The defendant's daughter testified that he did not always stay at the address, because he stayed at his grandmother's house in Boston when he was performing landscaping work. But this did not establish that the defendant stayed in Boston on any schedule, let alone that such schedule was known or should have been known to police. Thus, the early hour sufficed to establish a reasonable belief that the defendant would be at home, and the work-up testimony further supported that belief.

The defendant also contends that police violated the requirement that, "[e]xcept in certain limited circumstances, [they] must knock, identify themselves, and state their purpose before entering a dwelling to execute an arrest warrant" (quotation and citation omitted). Silva, 440 Mass. at 781 n.12. But the judge credited police testimony that they knocked and announced their identity and purpose three times, with no direct response from within, before they battered down the front door.

6

After their second announcement, they saw movement in an upstairs window and observed an adult woman inside. The testimony of an officer in the back yard that he did not hear the announcements, and the similar testimony of the defendant's daughter who was sleeping upstairs, does not render the judge's findings clearly erroneous.[4]

2. Protective sweep. The defendant next argues that police, after arresting and handcuffing him, lacked sufficient basis for conducting the protective sweep of the home, during which they observed a firearm in his bedroom. See Commonwealth v. Saywahn, 91 Mass. App. Ct. 706, 708-709 (2017) (requirements for protective sweeps). We conclude that we need not reach this argument, because the defendant has not explained why, if the protective sweep were invalid, the firearm or other evidence would need to be suppressed. The firearm was not seized (and the cocaine not found and seized) until the subsequent search of the home pursuant to the defendant's girlfriend's consent, which the judge found was voluntarily given.[5] That finding, as we

---

[4] The defendant also suggests that the manner of entry was unreasonable, in that up to seventeen officers were involved, many of them with military-style weapons and other gear, and that weapons were unnecessarily pointed at his girlfriend and their children. Because the defendant cites no legal authority in support of this argument, we do not consider it further.

[5] After the protective sweep and after being Mirandized, but before the consent search, the defendant made several statements to the police. However, neither in the trial court nor on

discuss infra, was not clearly erroneous.  And the defendant did not sufficiently raise below any claim that the consent was somehow the fruit of the protective sweep.  Thus, regardless of whether the protective sweep was valid, the motion to suppress was properly denied.

A motion to suppress "shall state the grounds on which it is based and shall include in separately numbered paragraphs all reasons, defenses, or objections then available, which shall be set forth with particularity."  Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004).

> "This requirement alerts the judge and the Commonwealth to the suppression theories at issue, and allows the Commonwealth to limit its evidence to these theories. There is no reason for the Commonwealth to extend unnecessarily the length of the suppression hearing by presenting evidence on issues not raised by the defense."

Silva, 440 Mass. at 781.

In his written motion to suppress, the defendant made the general claim that the entry into and search of his home violated his constitutional rights and that "[a]ny alleged consent to search . . . constituted the unlawful direct fruits of said violations."  The motion did not, however, set forth this claim with any particularity.  The motion did not mention the protective sweep, or distinguish between it and the

---

appeal has the defendant argued that the statements were fruits of the sweep or causally related to the consent search.

8

subsequent consent search, or allege that police exploited anything learned during the sweep to obtain consent to the search, or that the consent was insufficiently attenuated from the sweep. The defendant filed the affidavit of his girlfriend asserting she signed the consent form only under police pressure, but the affidavit did not mention the protective sweep, let alone any causal relationship it might have to her consent to the search.

Accordingly, the Commonwealth was not on notice that it needed to elicit any evidence on those issues at the hearing on the motion to suppress. The Commonwealth had no reason to offer evidence, for example, on whether the police decision to seek consent for the search was prompted by their observation of the firearm during the sweep, or on whether police used their knowledge of the firearm to obtain the girlfriend's consent. Cf. Commonwealth v. Pearson, 486 Mass. 809, 813-814 (2021).[6] We

---

[6] In Pearson the court explained that where evidence was observed during an initial unlawful entry, but then later seized during a search pursuant to a warrant supported by probable cause, suppression was not required if the Commonwealth could "show[] by a preponderance of the evidence that the challenged evidence is admissible pursuant to the independent source exception to the exclusionary rule." Id. at 813. This required the Commonwealth to show that "(1) the officers' decision to seek the search warrant was not prompted by what they observed during the initial illegal entry, and (2) the affidavit supporting the search warrant application contained sufficient information to establish probable cause, 'apart from' any observations made during the earlier illegal entry" (citation omitted). Id.

see nothing in the hearing transcript directly bearing on either proposition.[7]  Nor is it self-evident that the Commonwealth could not make either showing; police knew even before conducting the protective sweep that, according to the RISP, the defendant was "highly likely" to have firearms in his possession (to say nothing of cocaine), and this information alone could well have prompted them to seek consent to search the home.  In the defendant's closing argument at the hearing, he sought suppression on four separate grounds, but he did not argue that the consent search was the fruit of the protective sweep.  Nor did he so argue in his post-hearing memorandum.

Understandably, then, the judge made no findings regarding why police sought consent to search the home or whether they used their knowledge of the firearm to gain that consent.  Even on appeal, aside from two conclusory sentences in his brief, the defendant makes no claim that police would not have sought consent had they not seen the firearm during the sweep.[8]  Cf.

---

[7] The closest the testimony came to these points was the lieutenant's statement that, in asking the girlfriend to consent to a search, he told her that "police believed there may be evidence related to [the defendant]."

[8] The defendant's brief asserts without explanation that the fruits of the sweep "include[ed] the . . . consent," and that the discovery of the firearm "caused officers to seek consent." When asked at oral argument, the defendant was unable to go beyond the time sequence to explain any causal relationship between the sweep and the consent.  Merely asserting that

10

Commonwealth v. DeJesus, 439 Mass. 616, 627 n.11 (2003) (remand for further suppression proceedings unnecessary where defendant claimed no connection between discovery of evidence during unlawful entry and later application for warrant). Therefore, because we conclude infra that the consent search and seizure of the firearm and cocaine were valid, we need not and do not address whether the earlier protective sweep was valid.

4. Consent to search. The defendant challenges the judge's finding that the girlfriend voluntarily consented to the search of the home.

> "[T]he Commonwealth bears the burden of proof that consent was freely and voluntarily given, meaning it was unfettered by coercion, express or implied. Voluntariness of consent is a question of fact to be determined in the circumstances of each case. As a question of fact, it should not be reversed absent clear error by the judge" (quotations and citations omitted).

Commonwealth v. Buckley, 478 Mass. 861, 875 (2018). Many factors may be considered, and no single factor is dispositive.

---

consent occurred after and was insufficiently attenuated from the sweep does not suffice. The claim at oral argument that police unlawfully remained on the premises for too long after the arrest, the sweep, or both, and that this somehow tainted the consent, was not made to the judge, nor did he make findings on the issue, and thus we do not consider it. The cases cited in the defendant's post-argument letter regarding exploiting a prior illegality to obtain consent, Commonwealth v. Yehudi Y., 56 Mass. App. Ct. 812, 816-817 (2002), and Commonwealth v. Midi, 46 Mass. App. Ct. 591, 595 (1999), do not mitigate the failure to timely put the Commonwealth on notice that such issues should be addressed at the suppression hearing.

11

See E.B. Cypher, Criminal Practice and Procedure § 5:143 (4th ed. 2014). "[F]actors to consider include, but are not limited to: the presence of armed, uniformed officers; whether the defendant was informed of his right to refuse consent; the age, intelligence, and other personal characteristics of the defendant; and whether the defendant was in custody when consent was given." Commonwealth v. Carr, 458 Mass. 295, 302 (2010). Here, the judge found that consent was voluntary, and that finding is not clearly erroneous.

The judge found that after the defendant was escorted out of the home, police asked the girlfriend if she would consent to a search and told her that they would obtain a consent form from the police station and bring it to the house. Although she initially refused verbal consent, police told her that she could take some time to consider the matter while they retrieved the form. The conversation was "normal," and although she initially appeared confused and uncertain, police explained that they were targeting her boyfriend, not her. During the approximately ninety minutes it took to retrieve the form, she made several phone calls. The form stated that she had a right to refuse to allow a search without a warrant and that she was waiving that right "voluntarily, without threats or promises of any kind." The form was explained to her, and the judge found that "[n]o weapons were drawn, no threats made, and she was not forced to

12

sign."  She was told she could be present during the search, and she exercised that right.  She signed the form and did not "ask any questions, voice any objections, or indicate that she revoked her consent."  For these reasons the judge found that her consent was voluntary.

The defendant asserted at oral argument before us that the judge gave insufficient weight to the coercive atmosphere created by the police.  He points to the facts that police used a battering ram, that the girlfriend and children were ordered downstairs at gunpoint, and that the father of the girlfriend's children (i.e., the defendant) was handcuffed and taken away.  The judge acknowledged these facts, yet he also found the consent was voluntary.  Moreover, all of those events occurred before police initially asked the girlfriend for oral consent, yet at that point she refused, demonstrating that police actions up to that time had not overborne her will.

The defendant asserts that, after he was taken away, the girlfriend was subjected to further coercion, by being "held in her home, under police supervision, with [seventeen] officers, for an hour," before finally consenting.  But the defendant cites no evidence, nor do we see any in the record, that the girlfriend was detained for more than a brief period, if that, between when police entered and when the defendant came

13

downstairs and was handcuffed.  The judge was not asked to and did not make findings on that issue.

As for the presence of seventeen officers remaining in the home for an hour, there was little evidence and no finding to that effect.  The judge found that sixteen officers were involved in executing the warrant, including a twelve-member MSP special tactics team.  But the sergeant who led that team testified that once the occupants of the dwelling are brought outside and anyone being taken into custody is handed over to investigating officers, the team leaves.[9]  The defendant's daughter testified that there was one officer talking to the girlfriend about consenting to the search, and another officer was standing nearby and participating in parts of the conversation; there were four officers inside the home.  The officer who brought the consent form to the home likewise testified that he and another officer spoke to the girlfriend about consent.  The defendant did not argue to the judge that the number of officers present at the time consent was obtained made the atmosphere coercive.  The issue not having been raised

---

[9] The sergeant was not specifically asked and did not state when he and his team left the address at issue here, but it could be inferred from the question posed to him that they left once the defendant was taken away.

14

to the judge, and no finding on the issue having been made, the defendant has not established that the number was coercive.

One factor cited by the defendant is concerning and warrants separate discussion. The officers told the girlfriend that if she did not consent, they would apply for a search warrant. Although that by itself was not improper, on cross-examination one officer was asked whether it was customary when seeking consent to say that a search pursuant to a warrant would be "much more[,] whatever word is used, intrusive, chaotic, damaging search than the one" to be conducted if consent was given, and the officer agreed that this was a fair statement. The judge here found that the girlfriend was told a warrant search would be "significantly more invasive."

A threat of this sort is "highly improper," and in some circumstances "a prediction of police lawlessness could be sufficiently overbearing to render a consent involuntary." Commonwealth v. Kipp, 57 Mass. App. Ct. 629, 636 (2003). In Kipp, however, the statement was held not to invalidate the consent.[10] See id. The judge here found that the statement

---

[10] In Kipp, a defendant consented to a search of his apartment and later testified at a suppression hearing to his reasons for doing so, which did not include the desire to prevent a more disruptive search pursuant to a warrant. Id. at 636. Here, the defendant did not call his girlfriend as a witness to testify about how the officer's statement affected her, nor did her affidavit, despite claiming coercion, refer to any such statement. The defendant called his daughter as a

15

"does not compel the conclusion that [she] was coerced into consenting to the search," in light of the other factors suggesting that her consent was voluntary. Because the voluntariness of such consent is a question of fact, we must accept the judge's finding that consent was voluntary unless the finding is clearly erroneous, Buckley, 478 Mass. at 875, i.e., unless we have "the definite and firm conviction that a mistake has been committed" (quotation and citation omitted). Marlow v. New Bedford, 369 Mass. 501, 508 (1976). We have no such conviction; therefore, we will not disturb the judge's finding that consent was voluntarily given, making the search valid.

4. Commonwealth's rebuttal testimony. The defendant next claims that, at the suppression hearing, the judge improperly allowed the Commonwealth to put on much of its evidence through two rebuttal witnesses, i.e., after it had rested and then the defendant had called his daughter as a witness. It was defense counsel himself, however, who, after hearing the testimony of the Commonwealth's only witness, told the judge that, "[i]n order for this motion to be properly litigated," he needed another witness, who could testify about the moments before

witness, and she testified that police told her mother that if she did not sign the consent form they would "destroy the house completely." The judge did not address that particular statement, but he declined to credit other parts of the daughter's testimony about the process of obtaining consent.

16

police battered down the door. The judge expressed disappointment that the parties had not communicated more clearly about what issues were contested and what witnesses were needed. Defense counsel repeated his request for testimony about the entry, and the judge agreed to continue the hearing until a day when the appropriate witness could be present. At that hearing, defense counsel called the defendant's daughter as a witness on the consent issue. Then, without objection, the Commonwealth called two "rebuttal" witnesses, the first regarding the entry (as requested by defense counsel) and the second to rebut the daughter's testimony that the girlfriend's consent had been coerced.

In these circumstances, and particularly given defense counsel's affirmative requests and subsequent failures to object, the judge plainly had the discretion to proceed as he did. The defendant cites no authority that barred the judge from proceeding in this manner. Commonwealth v. Guidry, 22 Mass. App. Ct. 907, 909 (1986), affirms a judge's broad discretion in permitting rebuttal testimony. There was no abuse of discretion, let alone any substantial risk of a miscarriage of justice. See generally Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

5. Rhode Island charges. Finally, the defendant argues that what he claims was the dismissal of the original Rhode

17

Island charges against the defendant required suppression of the evidence here.  This argument fails at the threshold, because there is no evidence that the Rhode Island charges were dismissed.  In arguments at the motion hearing, the defendant asserted that dismissal had occurred, but the only remotely relevant record evidence on the point is that a Rhode Island court issued a suppression order in a case in which a person named Jason Oliver was one of twenty-four defendants.  Even assuming the person so named was the defendant here, nothing in the suppression order indicates that any charges against him, let alone the charges on which the extradition request was based, were ever dismissed.  In the absence of such evidence, we

see no need to discuss what effect, if any at all, such a dismissal might have on the suppression motion at issue here.

Order denying motion to
suppress affirmed.

By the Court (Desmond,
Sacks & Brennan, JJ.[11]),

Clerk

Entered:  June 16, 2025.

---

[11] The panelists are listed in order of seniority.